THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CLAUDIA SCHORRIG,
on her own behalf and behalf
of those similarly situated,

CASE NO.:

# 09-80973

CLASS ACTION
JURY TRIAL DEMANDED

                    Plaintiff,

vs.

## CIV-RYSKAMP

IBM SOUTHEAST EMPLOYEES'
FEDERAL CREDIT UNION,
LARY B. McCANTS,
CHRISTI SEAY,
JAY JONES, and
BARBARA LESCHANDER,

MAGISTRATE JUDGE
VITUNAC

FILED by __AB__ D.C.

JUN 3 0 2009

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

                    Defendants.

_____/

## CLASS ACTION COMPLAINT

NOW COMES Plaintiff and putative class representative, Claudia Schorrig ("Claudia") and brings claims on her own behalf and on behalf of those similar situated (the "Class") against Defendant IBM Southeast Employees' Federal Credit Union ("Credit Union" or "Defendant") for Defendant's recommending that Credit Union members purchase bonds and other investment products from non-party Wellstone Securities, LLC ("Wellstone"), which was nothing more than a bucket shop rife with fraud. The Credit Union's reckless or negligent advice cost the Class millions of dollars in losses. In support of the Class's claims, Claudia alleges as follows:

1

## PARTIES

1.    At all times relevant to this lawsuit, Plaintiff and putative class representative Claudia Schorrig lived in Boca Raton, Florida. She continues to do so today. At all times material to this litigation, Claudia was a Credit Union member.

2.    Defendant IBM Southeast Employees' Federal Credit Union is a federally chartered corporation under 12 U.S.C. § 1461 *et seq.*. The Credit Union maintains its headquarters in Boca Raton, Florida, where it was founded, along with seven other branches scattered around Florida. No localized operation, the Credit Union also maintains seven branches in Atlanta, Georgia, as well as one branch in Birmingham, Alabama. All told these branches serve over 70,000 members across the country.

3.    Defendant Lary B. McCants served as the Credit Union's President and Chief Executive Officer during times relevant and material to the allegations in this complaint. McCants maintains his office at the Credit Union's headquarters in Boca Raton, Florida, and upon information and belief, McCants is domiciled in the State of Florida.

4.    At times material to this complaint, Defendant Christi Seay ("Seay") worked as a Credit Union employee, in the capacity of a Credit Union "financial services representative." At times material to this complaint, and upon information and belief, it is alleged that Seay was domiciled in Florida.

5.    At times material to this complaint, Defendant Jay Jones ("Jones") worked as a Credit Union employee, in the capacity of a Credit Union "financial services representative." Jones did so in Credit Union offices located in Atlanta, Georgia. At

DIMOND KAPLAN & ROTHSTEIN, P.A.

OFFICES AT GRAND BAY PLAZA, 2665 SOUTH BAYSHORE DRIVE, PENTHOUSE 2B, MIAMI, FL 33133 • TEL. 305.374.1920 FAX. 305.374.1961

times material to this complaint, and upon information and belief, it is alleged that Jones was domiciled in Georgia.

6.    At times material to this complaint, Defendant Barbara Leschander ("Leschander") worked as a Credit Union employee, in the capacity of a Credit Union "financial services representative." At times material to this complaint, and upon information and belief, it is alleged that Leschander was domiciled in Florida.

## JURISDICTION

7.    This Court possesses subject-matter jurisdiction over this matter based upon 28 U.S.C. § 1331—federal-question jurisdiction.

8.    The securities that Claudia and the Class purchased from Wellstone—at Defendant's urging—were neither listed, nor authorized for listing on any national securities exchange. Nor were those securities issued by an investment company that had filed a registration statement or registered under the Investment Company Act of 1940. Consequently, the state-law causes of action alleged herein are not pre-empted by The Securities Uniform Litigation Standards Act of 1998 ("SLUSA").

9.    Federal subject-matter jurisdiction is also proper under the Class Action Fairness Act ("CAFA"). The amount at issue, plaintiffs believe, exceeds $5 million. Minimal diversity exists between Claudia and Defendant Jones. And the CAFA's other jurisdictional requirements are also satisfied.

DIMOND KAPLAN & ROTHSTEIN, P.A.

OFFICES AT GRAND BAY PLAZA, 2665 SOUTH BAYSHORE DRIVE, PENTHOUSE 2B, MIAMI, FL 33133 • TEL. 305.374.1920 FAX. 305.374.1961

## VENUE

10.     Venue is proper in this district because much, if not all, of the wrongs alleged herein occurred in Palm Beach County, Florida. Additionally, several named parties either reside in this district (as is the case with Claudia), or maintain their headquarters in this district (as does the Credit Union).

## FACTUAL ALLEGATIONS—WHAT HAPPENED

11.     Claudia and the Class hereby disclaim any and all inferences or allegations that the Credit Union acted with any intent. They also disclaim and eschew any allegations of fraud. If anything, the Credit Union and the other defendants acted with negligence—a state of mind that did not rise to deliberate recklessness or beyond. Further, the Defendants, in all of the violations alleged herein, employed instrumentalities of interstate commerce, *e.g.*, the telephone, the internet, and the United States mails, to commit the violations alleged herein.

12.     In July 2004, Claudia was working for IBM. Like so many other IBM employees, Claudia joined the Credit Union. Wanting to invest her nest egg, Claudia went to her trusted Credit Union and asked for its help and advice.

13.     The Credit Union and other Defendants eagerly directed Claudia to Wellstone and, in so doing, sowed the seeds of Claudia's turmoil.

14.     Wellstone was the sole market-maker for bonds and other worthless paper issued by non-party Cornerstone Ministries Investments, Inc. ("Cornerstone"). As it turns out, both Wellstone and Cornerstone, which were affiliates of one another, brazenly flouted the federal and state securities laws—all to the great detriment of bond buyers like Claudia and the Class members.

4

DIMOND KAPLAN & ROTHSTEIN, P.A.

OFFICES AT GRAND BAY PLAZA, 2665 SOUTH BAYSHORE DRIVE, PENTHOUSE 2B, MIAMI, FL 33133 • TEL. 305.374.1920 FAX. 305.374.1961

15.    Based upon her Credit Union's recommendation, which gave Wellstone a coveted imprimatur of legitimacy, Claudia paid fifty thousand dollars ($50,000) for a bond issued by Cornerstone. Shortly thereafter, in January 2005, Claudia trustingly spent another ten thousand dollars ($10,000) to purchase another Cornerstone bond, again through Wellstone and with the active solicitation of the Credit Union and at least one of the individual defendants.

16.    Eventually, Cornerstone collapsed under the weight of a fraud scheme that would bring down the wrath of the Georgia Securities Commission. Wellstone was likewise cast into the lion's den with Cornerstone. Sadly, nothing much is left for Claudia or the Class.

17.    Neither Claudia nor any Class member has received any interest on the bonds for quite some time, and Claudia's bonds are soon to mature. But neither Cornerstone nor Wellstone stand in any position to ante up.

18.    But, Cornerstone and Wellstone are not the only wrongdoers here. The Credit Union and other Defendants miserably failed Credit Union members by directing them to the hucksters and confidence men at Wellstone and Cornerstone.

19.    The Credit Union not only recommended Wellstone, which in turn, sold Cornerstone's worthless securities to unsuspecting investors like Claudia and the Class, the Credit Union would go much, much further into they miry clay with Wellstone. The Credit Union would so descend by actively soliciting members to purchase Cornerstone securities through Wellstone.

20.    For example, the Credit Union sent out newsletters to Credit Union members like Claudia and the Class (Defendant McCants controlled the content of these

5

newsletters.) which touted Wellstone and coxed Credit Union members with the
following recommendations:



When it comes to <u>financial services</u>, every institution has a different outlook. At IBM Southeast EFCU, our goal is to look out for your future. We help you keep pace with changing realities, set targets to achieve your goals, and cope with changing financial needs and responsibilities. Independent Financial Services Representatives are ready to share their wealth of experience - and are specially trained to answer your questions with valuable information that can improve your financial well-being.
Buying a home? Paying medical or education bills? Planning for retirement? Looking for investment opportunities*?
Contact a Financial Services Representative today.

**In Boca Raton**, call: Christi Seay, 561.982.4700, ext. 4772
**In Tampa, call**: Barbara Leschander, 727.848.2219
**In Atlanta, call**: Jay Jones, 678.797.6303
**In all other areas, call**: 800.873.5100, ext. 4772

*Auto Acquisition Car Finder service provided by Alliance Leasing Corporation.
***Securities offered through Wellstone Securities, LLC**, Member NASD/SIPC. Investment products offered are not FDIC, NCUA or NCUSIF insured. Investment products are not obligations of or guaranteed by IBM Southeast EFCU, involve investment risk including the possible loss of principal, and may lose value.

Credit Union Newsletter, Summer 2003 (http://ww.ibmsecu.org/htm/News.BN0603.asp)
(downloaded Jun. 12, 2009) (Emphasis added). In fact, Christi Seay's business card says
"Wellstone Securities, LLC," and that the office was located at "IBM Southeast EFCU"
in Boca Raton, Florida. *See* Exhibit A. Thus, it is clear that the Credit Union's own
representatives played an active role in soliciting Credit Union members to buy
Cornerstone securities through Wellstone Securities.

21.    Clearly, then, the Credit Union took on as part of its business
recommending Wellstone to its clients. The Credit Union, with the services of the
individual defendants here, functioned as a "feeder" for the fraudsters at Wellstone, and
in so doing, aided and abetted Wellstone's and Cornerstone's fraud.

6

22.    Additionally, in other proceedings, a Cornerstone board member, John Ottinger, Jr., has testified that the Credit Union established a business relationship with Wellstone and, perhaps, Cornerstone, to refer or actively solicit Credit Union members to purchase Cornerstone securities.

23.    Ottinger's testimony implies that the Credit Union did not so act *gratis*. Rather, the Credit Union fed Wellstone and Cornerstone clients, or prey, for a fee.

24.    Unfortunately, the Credit Union referred clients to Cornerstone and Wellstone, and actively participated in soliciting Credit Union clients to purchase Cornerstone securities, without doing even a modicum of due diligence.

25.    The Credit Union undertook as part of its for-profit business to direct its members to Wellstone Securities and to Cornerstone.  Yet the Credit Union apparently failed to detect and to disclose to its members the following cautionary facts about Wellstone and Cornerstone—facts that could've been discovered by any entity that, in exchange for a fee, undertook to recommend that clients trust Wellstone and Cornerstone:

    a.    Cornerstone said in an SEC registration statement that its common stock was approved for listing on the Chicago Stock Exchange under the symbol IHN; that was a lie.  Cornerstone's securities were not even listed on the Chicago Exchange;

    b.    Regulators from Maine, Michigan, Minnesota, and Texas brought actions against Cornerstone for lying about Cornerstone's stock being listed,  *see* Exhibit B (Texas Securities regulators' action against Cornerstone);

    c.    That, according to a "Stop Order" issued by the State of New Jersey's Bureau of Securities, "Cornerstone engaged in dishonest and unethical practices in the securities business," *see* Exhibit C at ¶ 16 (New Jersey Bureau of Securities Order) (Oct. 5, 2005);

7

DIMOND KAPLAN & ROTHSTEIN, P.A.

OFFICES AT GRAND BAY PLAZA, 2665 SOUTH BAYSHORE DRIVE, PENTHOUSE 2B, MIAMI, FL 33133 • TEL. 305.374.1920 FAX. 305.374.1961

d. That Wellstone Securities was a broker-dealer affiliated with Cornerstone, and that Cornerstone had recruited Jack Wehmiller to launch Wellstone as Cornerstone's exclusive broker-dealer, even though applicable regulations forbid such activities;

e. That, in an attempt to avoid those forbidding and applicable regulations, Cornerstone ordered Wehmiller to give Wellstone Securities to a non-profit company called the African-American Church Growth Foundation, Inc.

26.     Rather, the Credit Union and its agents, employees, and officers, spoke positively about Wellstone and Cornerstone, touting Cornerstone's philanthropic mission to fund the construction of churches for the faithful and assisted living facilities for the aged. They omitted any mention of easily ascertainable and very material information that Wellstone and its creator and benefactor, Cornerstone, were entities to beware of and should be thoroughly investigated before investing. Additionally, just about every broker-dealer or investment advisor who sold Cornerstone securities had a history of regulatory violation—yet another fact that the Credit Union negligently failed to discover or to disclose. *See* Exhibit D.

27.     Additionally, other factors militated that the Credit Union undertake some modicum of due diligence before either recommending Wellstone or actively soliciting its members to buy Cornerstone securities through Wellstone:

a. Both Wellstone and Cornerstone were obscure actors in the securities markets;

b. Cornerstone securities were likewise obscure, as well as unregistered and ill-liquid.

28.     Upon information and belief, the Credit Union acted negligently, to the great detriment of Claudia and the Class, without obtaining reliable information about the issuer, Cornerstone, or the broker-dealer, Wellstone.

DIMOND KAPLAN & ROTHSTEIN, P.A.

OFFICES AT GRAND BAY PLAZA, 2665 SOUTH BAYSHORE DRIVE, PENTHOUSE 2B, MIAMI, FL 33133 • TEL. 305.374.1920 FAX. 305.374.1961

29.    Upon information and belief, the Credit Union actively and negligently solicited, through its agents identified in paragraph 20, *supra.*, members like Claudia and the Class to purchase Cornerstone securities.   The Credit Union did so without undertaking any due diligence to determine the creditworthiness and trustworthiness of Wellstone or Cornerstone.

30.    The Credit Union and its employees, agents, and officers made via oral communications and otherwise materially inaccurate statements about Cornerstone securities including, but not limited to, inaccurate statements about the creditworthiness of Cornerstone and the quality of Cornerstone securities.

31.    Additionally, the Credit Union negligently omitted to disclose certain material facts about Cornerstone, Wellstone, and principals like Ottinger and others to Credit Union members. Some of those omissions are alleged in paragraphs 25(a) through (e) and 27, *supra.*

### COUNT ONE—VIOLATION § 12(a)(2) SECURITIES ACT OF 1933— AGAINST ALL DEFENDANTS

32.    Claudia and the Class incorporate here by reference the facts alleged in paragraphs 1 through 31, as if fully re-alleged herein.

33.    The Credit Union qualifies as a statutory seller under 15 U.S.C. § 77l(a)(2) because the Credit Union, its employees, agents, or officers undertook an active role in soliciting Credit Union members to purchase bonds issued by Cornerstone.

34.    The Credit Union, its employees, agents, or officers did so because the Credit Union received a financial benefit for doing so.

DIMOND KAPLAN & ROTHSTEIN, P.A.

OFFICES AT GRAND BAY PLAZA, 2665 SOUTH BAYSHORE DRIVE, PENTHOUSE 2B, MIAMI, FL 33133 • TEL. 305.374.1920 FAX. 305.374.1961

35.    The Credit Union's negligent omissions and negligently inaccurate statements caused Claudia and the Class to purchase Cornerstone securities.  Claudia and the Class have losses that, in the aggregate, run into the millions of dollars.

### COUNT TWO—CONTROL-PERSON LIABILITY UNDER SECURITIES ACT § 15 AGAINST DEFENDANT MCCANTS

36.    Claudia and the Class incorporate here by reference the facts alleged in paragraphs 1 through 31, and paragraphs 33 through 35, *supra.*, as if fully re-alleged herein.

37.    By virtue of his power and duties as the Credit Union's Chief Executive Officer, McCants possessed the power to control the Credit Union, including the Credit Union's due diligence, negligent statements and negligent omissions regarding Wellstone and Cornerstone.

38.    McCants also possessed the power to control Defendants Jones, Seay, and Leschander. He failed to exercise that control properly.

39.    McCants utterly failed to exercise that control and to prevent the negligent misstatements and omissions that the Credit Union made to its members when Credit Union representatives like Christi Seay actively solicited Class members to purchase Cornerstone securities through Wellstone.

40.    In fact, after Wellstone collapsed, McCants wrote a letter in September 2008 to Credit Union members, wherein he stressed that Wellstone's replacement "was chosen with much due diligence."   That due diligence was obviously lacking for Wellstone and Cornerstone.  McCants' ability to control and failure to excise that control properly caused Claudia and the Class to lose millions of dollars in the aggregate.

DIMOND KAPLAN & ROTHSTEIN, P.A.

OFFICES AT GRAND BAY PLAZA, 2665 SOUTH BAYSHORE DRIVE, PENTHOUSE 2B, MIAMI, FL 33133 • TEL. 305.374.1920 FAX. 305.374.1961

## COUNT THREE—NEGLIGENT REFERRAL OR RECOMMENDATION—
## SECTION 552 RESTATEMENT (SECOND) TORTS—AGAINST ALL DEFENDANTS

41.    Claudia and the Class incorporate here by reference the facts alleged in paragraphs 1 through 31, and 35 *supra.*, as if fully re-alleged herein.

42.    Florida courts recognize a cause of action under Section 552 Restatement (Second) Torts. So do Georgia courts.

43.    As alleged herein, the Credit Union recommended to its members that they trust Wellstone and that its members purchase Cornerstone securities from Wellstone.

44.    The Credit Union intended that its members rely on that recommendation and referral.

45.    The Credit Union did so in the course of its business, and it did so as part of a transaction in which the Credit Union had a financial interest.

46.    The Credit Union and its agents, employees, and officers failed to exercise reasonable due care and competency when they referred Claudia and all other Class members to Wellstone.

47.    The same is true for statements and omissions made by the Credit Union, its employees, agents, and officers when they actively solicited Class members to purchase Cornerstone securities through Wellstone.

48.    Claudia and all other Class members stand within a limited group of people, *i.e.*, Credit Union members, for whose benefit the Credit Union intended the recommendations, referrals, and solicitations.

49.    Claudia an d the Class indeed so reasonably and justifiably relied and because of that reliance, they suffered great financial loss.

11

DIMOND KAPLAN & ROTHSTEIN, P.A.

OFFICES AT GRAND BAY PLAZA, 2665 SOUTH BAYSHORE DRIVE, PENTHOUSE 2B, MIAMI, FL 33133 • TEL. 305.374.1920 FAX. 305.374.1961

## COUNT FOUR—VIOLATION OF THE GEORGIA SECURITIES ACT OF 1973
### AGAINST ALL DEFENDANTS

50.     Claudia and the Class incorporate here by reference the allegations stated in paragraphs 1 through 49, *supra*.

51.     Section 10-5-12(a) of the Georgia Securities Act of 1973 ("GSA") makes it unlawful, in connection with the offer, purchase, or sale of a security to make an inaccurate statement. Application of the GSA is limited to that subgroup of plaintiffs within the Class affected by conduct that occurred within the State of Georgia.

52.     Each Defendant violated GSA § 10-5-12(a), and the subgroup referenced in paragraph 51, *supra.*, suffered great economic harm as a consequence of Defendants' GSA violations. Consequently, each Defendant is liable to the Class under GSA § 10-5-14.

## COUNT FIVE—CONTROL PERSON LIABILITY UNDER GSA § 10-5-14(c)—
### AGAINST DEFENDANT MCCANTS

53.     Claudia and the Class incorporate here by reference the allegations stated in paragraphs 1 through 52, *supra*.

54.     GSA § 10-5-14(c) makes Defendant McCants liable as a "control person" because Defendant McCants was "an executive officer or director" of the Credit Union, and the Credit Union violated GSA § 10-5-12(a), as alleged in paragraphs 50 through 52, *supra*. The Defendants' GSA violations here not only caused the Georgia subgroup to purchase Cornerstone securities, those violations also caused the Georgia subgroup to lose large sums of money.

DIMOND KAPLAN & ROTHSTEIN, P.A.
OFFICES AT GRAND BAY PLAZA, 2665 SOUTH BAYSHORE DRIVE, PENTHOUSE 2B, MIAMI, FL 33133 • TEL. 305.374.1920 FAX. 305.374.1961

**COUNT SIX—AIDING & ABETTING WELLSTONE'S & CORNERSTONE'S VIOLATION OF
THE GEORGIA SECURITIES ACT OF 1973—AGAINST DEFENDANT JONES**

55.     The Class here incorporates by reference paragraphs 1 through 52, *supra.*, as if fully alleged herein.

56.     Section 10-5-12(a) of Georgia Securities Act of 1973 made it unlawful for Wellstone and Cornerstone to offer or sell Cornerstone securities by means of a false or misleading statement. Both Cornerstone and Wellstone violated § 10-5-12(a).

57.     Jones acted as "salesman" or a "limited salesman," and in so doing, Jones "participate[d] in a[] material way" in the unlawful offers and sales that Wellstone and Cornerstone made to Class members residing within the State of Georgia.

58.     In so doing, Jones violated GSA § 10-5-14(c), and is thus liable to Class members injured by his conduct. Jones's GSA violations here not only caused the Georgia subgroup to purchase Cornerstone securities, those violations also caused the Georgia subgroup to lose large sums of money.

**COUNT SEVEN—*RESPONDEAT SUPERIOR* LIABILITY AGAINST
DEFENDANT CREDIT UNION**

59.     Claudia and the Class incorporate here by reference the allegations contained in paragraphs 1 through 52, and 56 through 58, *supra.*

60.     At times material to this complaint, Defendant Jones served as a Credit Union employee.

61.     Defendant Jones was serving and acting squarely within the scope of this employment with Defendant Credit Union when Defendant Jones aided and abetted Wellstone's and Cornerstone's violations of the Georgia Securities Act.

13

DIMOND KAPLAN & ROTHSTEIN, P.A.
OFFICES AT GRAND BAY PLAZA, 2665 SOUTH BAYSHORE DRIVE, PENTHOUSE 2B, MIAMI, FL 33133 • TEL. 305.374.1920 FAX. 305.374.1961

62.    The Defendants' GSA violations here not only caused the Georgia subgroup to purchase Cornerstone securities, those violations also caused the Georgia subgroup to lose large sums of money.  Consequently, Defendant Credit Union is jointly and severally liable with Defendant Jones for Jones's liability under GSA § 10-5-14(c).

### COUNT EIGHT—AIDING & ABETTING THE CREDIT UNION'S VIOLATING THE GEORGIA SECURITIES ACT OF 1973— AGAINST DEFENDANTS MCCANTS , SEAY, LESCHANDER & JONES

63.    Claudia and the Class incorporate here by reference the allegations contained in paragraphs 1 through 52, and 56 through 58, *supra.*

64.    Section 10-5-12(a) of Georgia Securities Act of 1973 made it unlawful for the Credit Union to offer or sell Cornerstone securities by means of a false or misleading statement.  The Credit Union violated § 10-5-12(a).

65.    Defendants Seay, Leschander, and Jones acted as "salesman" or a "limited salesman," and in so doing, these defendants "participate[d] in a[] material way" in the unlawful offers and sales that the Credit Union made.

66.    At times material hereto, Defendant McCants acted as an executive officer or director of the Credit Union, and in addition to McCants' acting as a control-person, McCants' "participate[d] in a[] material way" in the unlawful offers and sales that the Credit Union made.

67.    In so doing, Defendants McCants Seay, Leschander, and Jones violated GSA § 10-5-14(c), and are thus liable to Class members injured by their aiding and abetting the Credit Union's GSA violations.  The Defendants' GSA violations here not only caused the Georgia subgroup to purchase Cornerstone securities, those violations also caused the Georgia subgroup to lose large sums of money.

14

## CLASS ALLEGATIONS

68.    Claudia and the Class seek class certification under Rule 23 of the Federal

Rules of Civil Procedure, and to that end make the following allegations regarding class

action status and certification:

a.    Plaintiff brings this putative class action under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure;

b.    Plaintiff does so on behalf of all Credit Union members who acquired Cornerstone securities through either the referral, recommendation, or active solicitation of Defendants, beginning on July 30, 2005 through September 5, 2008;

c.    Excluded from the Class are all the defendants, the Credit Union, its officers and directors, their legal representatives, heirs, and assigns, as well as any entity in which any of the foregoing had or has a controlling interest;

d.    The members of the Class are so numerous that joinder of all Class members is impracticable;

e.    Plaintiff believes that the Class members number in the hundreds;

f.    Plaintiff's claims are typical of that of the Class;

g.    The Class period runs from at least July 30, 2004 through September 5, 2008;

h.    Plaintiff will fairly and adequately protect the Class' interests and has retained counsel experienced and competent in the prosecution of class actions involving violations of the Georgia and federal securities laws;

i.    A class action is superior to all other methods of resolution; and

j.    Question of law and fact predominate over any questions solely affecting individual Class members; those common questions include:

1.    Whether Wellstone and Cornerstone violated the GSA;

2.    Whether the Credit Union violated § 12(a)(2) of the Securities Act of 1933;

15

3.  Whether the Defendants violated § 552 of the Restatement (Second) of Torts;

4.  Whether the individual Defendants are liable as aiders and abettors under the GSA;

5.  Whether Defendant McCants is liable as a control person under either the Securities Act of 1933 or the GSA;

6.  Whether Defendant Jones aided and abetted Wellstone's and Cornerstone's GSA violations; and

7.  Whether the Class has suffered damages from the violations alleged.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

A.  Determining that this is a proper class action and certifying it as such, along with appointing Plaintiff the class representative;

B.  Determining that Defendants perpetrated the wrongs identified in this complaint, and that those wrongs damaged Plaintiff and the Class;

C.  Awarding compensatory damages in Plaintiff's and the Class's favor, including pre-judgment interest, costs, and expert fees, and attorney's fees, at an amount to be determined in a jury trial;

D.  Awarding rescission and a rescissionary measure of damages;

E.  Such equitable and injunctive relief as the Court deems appropriate.

16

DIMOND KAPLAN & ROTHSTEIN, P.A.

OFFICES AT GRAND BAY PLAZA, 2665 SOUTH BAYSHORE DRIVE, PENTHOUSE 2B, MIAMI, FL 33133 • TEL. 305.374.1920 FAX. 305.374.1961

## JURY DEMAND

Plaintiff hereby demands a trial by jury for all issues so triable.

Dated:  June 30, 2009.

By: _____ FDYZ

      SCOTT L. SILVER
      Fla. Bar No. 095631
      silver@stockattorneys.com
      BLUM & SILVER, LLP
      Attorneys for Plaintiff
      12540 W. Atlantic Blvd.
      Coral Springs, FL 33071
      Telephone: (954) 255-8181
      Facsimile: (954) 255-8175

      SCOTT M. DIMOND
      Fla. Bar No. 995762
      JEFFREY B. KAPLAN
      Fla. Bar No. 39977
      DAVID A. ROTHSTEIN
      Fla. Bar No. 0056881
      DIMOND KAPLAN & ROTHSTEIN, P.A.
      Offices at Grand Bay Plaza
      2665 South Bayshore Drive, Penthouse 2B
      Miami, Florida 33133
      Telephone (305) 374-1920
      Facsimile: (305) 374-1961

# Exhibit A
# Defendant Seay's Business Card



Located at IBM Southeast EFCU

**Christi-lyn Seay**

**Branch Manager**
790 Park Of Commerce Blvd
Boca Raton, FL 33487
Phone: (561) 982-4772
Fax: (561) 982-4798
Cell: (305) 519-6875
email: christiblew@aol.com

Securities offered by Walnut Street Securities, LLC Member NASD-SIPC

Exhibit B
New Jersey Bureau of Securities Order
*In the Matter of Cornerstone Ministries*
*Investments, Inc.*

STATE OF NEW JERSEY
BUREAU OF SECURITIES
P.O. Box 47029
Newark, New Jersey 07101
(973) 504-3600

| | |
|---|---|
| IN THE MATTER OF : | |
| CORNERSTONE MINISTRIES INVESTMENTS, INC. : | STOP ORDER |
| SR-11078 : | |
| Respondent. : | |

To:    Cecil A. Brooks
       Chairman of the Board, President and Chief Executive Officer
       Cornerstone Ministries Investments, Inc.
       2450 Atlanta Highway
       Suite 904
       Cumming, GA 30040

       Attorneys for the Issuer:

       Drew Field, Esq.
       Law Offices of Drew Field
       25363 Flanders Drive
       Carmel, CA 93923

              and

       Billy Eiselstein, Esq.
       Miller & Martin, PLLC
       1170 Peachtree Street, NE
       Suite 800
       Atlanta, GA 30309

Pursuant to the authority granted to the Chief of the New Jersey Bureau of Securities

("Bureau"), by the Uniform Securities Law, as amended, L. 1997, c. 276 N.J.S.A. 49:3-47 to

N.J.S.A. 49:3-76 ("Law"), more specifically, N.J.S.A. 49:3-64, and after careful review and due

consideration of the facts set forth below by the Bureau Chief, the effectiveness of the Registration Statement of Cornerstone Ministries Investments, Inc., ("Cornerstone" or "the issuer") is DENIED.

## BACKGROUND

1.  Cornerstone Ministries Investments, Inc., ("Cornerstone"), whose address is 2450 Atlanta Highway, Suite 904, Cumming, GA 30040, is a corporation organized and existing under the laws of the State of Georgia.

2.  Mr. Cecil A. Brooks, whose mailing address is 2450 Atlanta Highway, Suite 904, Cumming, GA 30040, is a Director, Chairman of the Board, President and Chief Executive Officer of Cornerstone.

3.  Mr. John T. Ottinger, whose mailing address is 2450 Atlanta Highway, Suite 904, Cumming, GA 30040, is a Director, Vice President, Chief Operating Officer, Secretary and Treasurer of Cornerstone.

4.  Wellstone Securities, LLC, ("Wellstone") whose mailing address is 6030 Bethelview Road, Suite 101, Cumming, GA 30040, is engaged in the business of a securities broker-dealer, and holds CRD # 121559. Wellstone is registered as a broker-dealer in New Jersey.

5.  Wellstone Securities, LLC is the underwriter of the securities of Cornerstone.

6.  Cornerstone filed an application with the Bureau to register its securities on March 10, 2005.

7.  Cornerstone seeks to register its Series F bonds, at $500 per bond, and Common Stock at $6.50 per share.

8.  This registration statement was filed with Securities and Exchange Commission on or about August 27, 2004.

9.  The initial registration statement for this public offering of bonds and common stock included statements that Cornerstone's common stock was approved for listing on the Chicago Stock Exchange ("CHX" or "Exchange") under the symbol "IHN."

10. Following inquiries by the Office of Financial and Insurance Services, the Chicago Stock Exchange, on or about, December 3, 2004, issued a letter that Cornerstone's securities are

not listed on the Chicago Stock Exchange.

11.    As a result, securities regulators for Maine, Michigan, Minnesota and Texas brought actions against Cornerstone.

## CORNERSTONE IS THE SUBJECT OF STATE ORDERS REVOKING ITS SECURITIES REGISTRATION

12.    On December 16, 2004, Michigan issued an Order of Denial of Effectiveness of Registration of Securities.

13.    Texas issued a Cease and Desist Order on or about February 9, 2005. Cornerstone was ordered to cease and desist from engaging in materially misleading conduct in connection with the offer and sale of securities in Texas. Cornerstone was also assessed an administrative fine in the amount of $20,000.

14.    On April 26, 2005, Cornerstone and the Minnesota Commission of Commerce entered into a Consent Cease and Desist Order, preventing Cornerstone from offering or selling securities in the State of Minnesota.

## CORNERSTONE ENGAGED IN DISHONEST AND UNETHICAL PRACTICES

15.    Cornerstone engaged in dishonest and unethical practices in the securities business.

16.    Cornerstone misled potential investors by stating that the shares were approved for listing on the Chicago Stock Exchange when they were not.

## APPLICABLE LAW

17.    N.J.S.A. 49:3-64 (a) (1) and N.J.S.A. 49:3-64 (a) (2) (viii) (D) states that:

The bureau chief may issue a stop order denying effectiveness to . . . any registration statement if he finds: (1) that the order is in the public interest and (2) that (viii). . . (D) is the subject of an order entered by any federal or state securities, commodities, banking, insurance or investment advisory administrator or self-regulatory organization denying or revoking any securities, commodities, banking, insurance or investment advisory license or registration under federal or state securities, commodities, banking, insurance or

investment advisory law.

18.    N.J.S.A. 49:3-64 (a) (1) and N.J.S.A. 49:3-64 (a) (2) (viii) (E) states that:

The bureau chief may issue a stop order denying effectiveness to . . . any registration statement if he finds: (1) that the order is in the public interest and (2) that (viii)...any ...(E) the issuer...engaged in dishonest or unethical practices in the securities business.

## DENIAL OF EFFECTIVENESS OF THE REGISTRATION STATEMENT BASED ON ORDERS DENYING OR REVOKING CORNERSTONE'S REGISTRATION

19.    The issuer, Cornerstone, is the subject of orders of other states' securities administrators denying or revoking its securities registration. This serves as a basis under N.J.S.A. 49:3-64(a)(2)(viii)(D) to deny the Registration Statement of Cornerstone Ministries.

20.    Based upon the foregoing, the denial of Cornerstone Ministries' Registration Statement is in the public interest and necessary for the protection of investors, as per N.J.S.A. 49:3-64(a)(1).

## DENIAL OF EFFECTIVENESS OF THE REGISTRATION STATEMENT BASED ON THE DISHONEST AND UNETHICAL PRACTICES OF THE ISSUER

21.    The prospectus for this public offering of bonds and common stock included statements that Cornerstone's common stock was approved for listing on the Chicago Stock Exchange ("CHX" or "Exchange") under the "IHN."

22.    However, as correspondence from the CHX clearly indicates, Cornerstone was never actually approved for listing.

23.    This is evidenced by correspondence from the Chicago Stock Exchange.

24.    This is constitutes a dishonest and misleading practice of the issuer, and is therefore a basis for the denial of Cornerstone Ministries' Registration as per N.J.S.A. 49:3-64 (a)(2)(viii)(E).

25.    Based upon the foregoing, the denial of Cornerstone Ministries' Registration Statement is

in the public interest and necessary for the protection of investors pursuant to N.J.S.A. 49:3-64(a)(1).

For the reasons stated above, this Stop Order is hereby entered against the Registration Statement of Cornerstone Ministries Investments, Inc. and the securities registration is denied.

It is on this    5th    day of    October    2005, hereby ORDERED pursuant to N.J.S.A. 49:3-64 (a) (1), N.J.S.A. 49:3-64 (a) (2) (viii) (D), and N.J.S.A. 49:3-64 (a) (2) (viii) (E), and that the effectiveness of the registration of CORNERSTONE MINISTRIES INVESTMENTS is DENIED.

_____
Franklin L. Widmann
Chief, Bureau of Securities

Dated: ___October 5, 2005___

## NOTICE OF RIGHT TO HEARING

Pursuant to N.J.S.A. 49:3-64, this matter will be set down for a hearing if a written request for such hearing is filed with the Bureau Chief within fifteen (15) days after the respondent receives this Complaint and proposed Order. A request for a hearing must be accompanied by a written response which addresses specifically each of the reasons set forth in the Complaint. A general denial is unacceptable. At any hearing involving this matter, a corporation must be represented by an attorney of its choice, unless a non-attorney is representing a corporation in accordance with R. 1:21-1 (e) and N.J.A.C. 1:1-5.4.

If no hearing is requested, the Order shall be entered as a Final Order and will remain in effect until modified or vacated. If a hearing is held, the Bureau Chief shall affirm, vacate or modify the Order in accord with the findings made at the hearing.

## NOTICE OF OTHER ENFORCEMENT REMEDIES

You are advised that the Uniform Securities Law (1997), N.J.S.A. 49:3-47 et seq., provides several enforcement remedies which are available to be exercised by the Bureau Chief either alone or in combination. These remedies include, in addition to this action denying the Registration Statement, the right to seek and obtain injunctive and ancillary relief in a civil enforcement action, N.J.S.A. 49:3-69, and the right to seek and obtain civil penalties in an administrative or civil action. N.J.S.A. 49:3-70.1 and N.J.S.A 49:3-71.

You are further advised that the entry of a Final Order does not preclude the Bureau Chief from seeking and obtaining other enforcement remedies against you in connection with the claims made against you in this action.

Exhibit C
Texas State Securities Board
*In the Matter of Cornerstone Ministries
Investments, Inc., et al.*

DENISE VOIGT CRAWFORD
SECURITIES COMMISSIONER

DON A. RASCHKE
DEPUTY SECURITIES COMMISSIONER

Mail: P.O. BOX 13167
AUSTIN, TEXAS 78711-3167

Phone: (512) 305-8300
Facsimile: (512) 305-8310



**Texas State Securities Board**

208 E. 10th Street, 5th Floor
Austin, Texas 78701-2407
www.ssb.state.tx.us

JACK D. LADD
CHAIRMAN

KENNETH W. ANDERSON, JR.
MEMBER

BRYAN K. BROWN
MEMBER

BETH ANN BLACKWOOD
MEMBER

WILLIAM R. SMITH
MEMBER

| | |
|---|---|
| IN THE MATTER OF<br>CORNERSTONE MINISTRIES<br>INVESTMENTS, INC., WELLBROOK<br>PROPERTIES, INC., CECIL A.<br>BROOKS, AND JOHN T. OTTINGER | §<br>§<br>§<br>§<br>§ |

Order No.   ENF-05-CDO/FIN-1582

TO:   Cornerstone Ministries Investments, Inc.
2450 Atlanta Highway, Suite 904
Cumming, Georgia 30040

Wellbrook Properties, Inc.
2450 Atlanta Highway, Suite 904
Cumming, Georgia 30040

Cecil A. Brooks
2450 Atlanta Highway, Suite 904
Cumming, Georgia 30040

John T. Ottinger
2450 Atlanta Highway, Suite 904
Cumming, Georgia 30040

### AGREED CEASE AND DESIST ORDER

Be it remembered that Cornerstone Ministries Investments, Inc. ("Respondent Cornerstone"), Wellbrook Properties, Inc. ("Respondent Wellbrook"), Cecil A. Brooks ("Respondent Brooks"), and John T. Ottinger ("Respondent Ottinger") (collectively "Respondents") appeared before the Securities Commissioner of the State of Texas ("Securities Commissioner") and consented to the entry of this Order and the Findings of Fact and Conclusions of Law contained herein.

### FINDINGS OF FACT

1.   Respondents have waived (a) Respondents' right to notice and hearing in this matter; (b) Respondents' right to appear and present evidence in this matter; (c) Respondents' right to appeal this Order; and (d) all other procedural rights granted

to Respondents by The Securities Act, TEX. REV. CIV. STAT. ANN. art. 581-1 et seq. (Vernon 1964 & Supp. 2005) ("Texas Securities Act"), and the Administrative Procedure Act, TEX. GOV'T CODE ANN. §2001.001 et seq. (Vernon 2000 & Supp. 2005) ("Administrative Procedure Act").

2.    Respondent Cornerstone maintains a last known address at 2450 Atlanta Highway, Suite 904, Cumming, Georgia 30040.

3.    Respondent Wellbrook maintains a last known address at 2450 Atlanta Highway, Suite 904, Cumming, Georgia 30040.

4.    Respondent Brooks maintains a last known address at 2450 Atlanta Highway, Suite 904, Cumming, Georgia 30040.

5.    Respondent Ottinger maintains a last known address at 2450 Atlanta Highway, Suite 904, Cumming, Georgia 30040.

6.    Respondents offered for sale to Texas residents shares of common stock and bonds in Respondent Cornerstone and shares of common stock in Respondent Wellbrook.

7.    In connection with the offer for sale of the above-described stock and bonds, Respondents have represented in numerous Form SB-2's filed with the U.S. Securities and Exchange Commission ("SEC") that in relation to Respondent Cornerstone "The shares are approved for listing on the Chicago Stock Exchange, under the symbol "IHN".", which is materially misleading or otherwise likely to deceive the public in light of the fact that the Chicago Stock Exchange ("Exchange") has never approved any of Respondent Cornerstone's securities, whether stocks, bonds or otherwise, for listing on the Exchange.

8.    In connection with the offer for sale of the above-described stock and bonds, Respondents have represented in Form S-11/A dated January 4, 2005, and filed with the State Securities Board on January 19, 2005, that "We are not aware of any major adverse business developments encountered by Cornerstone Ministries Investments.", which is materially misleading or otherwise likely to deceive the public in light of the fact that in a letter dated December 3, 2004, the Senior Vice President of the Exchange informed Respondents that, inter alia, Respondent Cornerstone had not satisfied the Exchange's minimum listings criteria, its pending application for listing is denied, and it should be assumed that any future applications for listing would be likewise denied.

9.    In connection with the offer for sale of the above-described stock and bonds, Respondents have represented in a prospectus dated December 27, 2004, and filed with the State Securities Board on January 19, 2005, that "We are not a party to any pending legal proceeding. We are not aware…that any governmental authority is contemplating any legal proceeding involving us…", which is materially misleading or otherwise likely to deceive the public in light of the fact that the State of Michigan, Department of Labor & Economic Growth, Office of Financial and Insurance

Services, Issued to Respondents in Enforcement Case Nos. 04-2978 and 04-2980 a Notice Of Opportunity To Show Compliance which alleges that, inter alia, Respondents have made an untrue statement of material fact, false and misleading statements, and filed an application for registration which contained a statement which was false or misleading with respect to a material fact.

<u>CONCLUSIONS OF LAW</u>

1. The above-described stocks and bonds are "securities" as that term is defined by Section 4.A of the Texas Securities Act.

2. Respondents have engaged in conduct that is materially misleading and likely to deceive the public in connection with the offer for sale of securities.

3. The foregoing violations constitute bases for the issuance of an Agreed Cease and Desist Order pursuant to Section 23.A of the Texas Securities Act.

<u>ORDER</u>

1. It is therefore ORDERED that Respondents immediately CEASE AND DESIST from engaging in conduct that is materially misleading or is otherwise likely to deceive the public in connection with the offer for sale of any security in Texas.

2. It is further ORDERED that Respondents are ASSESSED AN ADMINISTRATIVE FINE in the amount of Twenty Thousand Dollars ($20,000). Payment shall be made by delivery of a cashier's check to the Securities Commissioner in the amount of Twenty Thousand Dollars ($20,000), payable to the State of Texas, contemporaneously with the delivery of this Order.

SIGNED AND ENTERED by the Securities Commissioner this ___14th___ day of __February__, 2005.

DENISE VOIGT CRAWFORD
Securities Commissioner

Agreed Cease and Desist Order/Cornerstone, et al./Page 3

RESPONDENTS:

Cornerstone Ministries Investments, Inc.

_____
Cecil A. Brooks, Director, Chairman of
the Board, President, CEO


Wellbrook Properties, Inc.

_____
John T. Ottinger, President and Chief
Executive Officer

_____
Cecil A. Brooks, Individually

_____
John T. Ottinger, Individually

Approved as to Form:


John R. Morgan
Director
Enforcement Division


James Zier
Attorney
Enforcement Division


Billy Eiselstein
Attorney for Respondents

## ACKNOWLEDGMENT

On the _11th_ day of _February_, 2005, Cornerstone Ministries Investments, Inc. ("Respondent Cornerstone"), by and through Cecil A. Brooks, its Director, Chairman of the Board, President, and CEO, personally appeared before me, executed the foregoing Order and acknowledged that:

1.    Cecil A. Brooks is duly authorized to enter into the foregoing Order on behalf of Respondent Cornerstone;

2.    Cecil A. Brooks has read the foregoing Order;

3.    Respondent Cornerstone has been fully advised of its rights under the Texas Securities Act and the Administrative Procedure Act;

4     Respondent Cornerstone knowingly and voluntarily consents to the entry of the foregoing Order and the Findings of Fact and Conclusions of Law contained therein; and,

5.    Respondent Cornerstone, by consenting to the entry of the foregoing Order, has knowingly and voluntarily waived its rights as set forth therein.

Notary Public in and for
The State of _Georgia_

[affix notary seal here]

My commission expires on: _8/21/2006_

Agreed Cease and Desist Order/Cornerstone, et al./Page 6

## ACKNOWLEDGMENT

On the _11th_ day of _February_, 2005, Wellbrook Properties, Inc. ("Respondent Wellbrook"), by and through John T. Ottinger, its President and Chief Executive Officer, personally appeared before me, executed the foregoing Order and acknowledged that:

1.   John T. Ottinger is duly authorized to enter into the foregoing Order on behalf of Respondent Wellbrook;

2.   John T. Ottinger has read the foregoing Order;

3.   Respondent Wellbrook has been fully advised of its rights under the Texas Securities Act and the Administrative Procedure Act;

4.   Respondent Wellbrook knowingly and voluntarily consents to the entry of the foregoing Order and the Findings of Fact and Conclusions of Law contained therein; and,

5.   Respondent Wellbrook, by consenting to the entry of the foregoing Order, has knowingly and voluntarily waived its rights as set forth therein.

_Mildred A Montgamery_
Notary Public in and for
The State of _Georgia_

[affix notary seal here]

My commission expires on: _8/31/2006_

Agreed Cease and Desist Order/Cornerstone, et al./Page 7

## ACKNOWLEDGMENT

On the _11ᵗʰ_ day of _February_, 2005, Cecil A. Brooks ("Respondent") personally appeared before me, executed the foregoing Order and acknowledged that:

1.   Respondent read the foregoing Order;

2.   Respondent has been fully advised of his rights under the Texas Securities Act and the Administrative Procedure Act;

3.   Respondent knowingly and voluntarily consents to the entry of the foregoing Order and the Findings of Fact and Conclusions of Law contained therein; and,

4.   Respondent, by consenting to the entry of the foregoing Order, has knowingly and voluntarily waived his rights as set forth therein.


_____
Notary Public in and for
The State of _Georgia_

[affix notary seal here]

My commission expires on: _8/21/2006_


Agreed Cease and Desist Order/Cornerstone, et al./Page 8

**ACKNOWLEDGMENT**

On the _11th_ day of _February_, 2005, John T. Ottinger ("Respondent") personally appeared before me, executed the foregoing Order and acknowledged that:

1.    Respondent read the foregoing Order;

2.    Respondent has been fully advised of his rights under the Texas Securities Act and the Administrative Procedure Act;

3.    Respondent knowingly and voluntarily consents to the entry of the foregoing Order and the Findings of Fact and Conclusions of Law contained therein; and,

4.    Respondent, by consenting to the entry of the foregoing Order, has knowingly and voluntarily waived his rights as set forth therein.


_Mildred Montgamery_
Notary Public in and for
The State of _Georgia_

[affix notary seal here]

My commission expires on: _8/21/2006_

Agreed Cease and Desist Order/Cornerstone, et al./Page 9

# Exhibit D
# Chart Showing Cornerstone's Broker-Dealers' Regulatory History

Background and Regulatory History of CMI Broker-Dealers and Investment Advisors

| | Name of Broker Dealer/ Investment Advisors Who Sold CMI Bonds | Firm's Regulatory History |
|---|---|---|
| 1. | American Heritage Church Finance | • Formed in Florida on 02/01/1984<br>• The main office is in Casselberry, FL<br>• History of Regulatory Violations?<br>   o  yes |
| 2. | Bauerle Financial, Inc | • An investment adviser firm<br>• Formed in Florida on 01/02/1995<br>• The main office is in Deland, FL<br>• Registered in Florida and Texas |
| 3. | Cambridge Legacy Securities, Inc | • Formed in Delaware on 09/09/1999<br>• The main office is in Dallas, TX<br>• Other Names of this Firm<br>   o  Abel Financial, TX<br>   o  Amerus, TX<br>   o  BDT & Associates, AZ<br>   o  Breedlove Financial, TX<br>   o  Cornerstone Financial Services, Inc; TX<br>   o  Cornerstone Financial Advisors, LA<br>   o  Howard & Barr, TX<br>   o  Howard Capital Management, TX<br>   o  Lighthouse Financial Group, VA<br>   o  Mike Henry & Associates, TX<br>   o  Morgan Legacy Trust, FL<br>   o  Northstar Brokerage, AZ, NM<br>   o  Strategic Financial Solutions, Inc, NC<br>   o  U.S. Wealth Advisors, Inc; TX<br>   o  Valta, Inc; NC<br>   o  Wealth Management Advisors, TX<br>   o  Wealth Resource Management, Inc; GA<br>• History of Regulatory Violations?<br>   o  yes |
| 4. | Commonwealth Church Finance | • Formed in Georgia on 08/27/1981<br>• The main office is in McDonough, GA<br>• History of Regulatory Violations?<br>   o  yes |
| 5. | G.A. Repple & Company | • Formed in Florida on 11/05/1985<br>• The main office is in Casselberry, FL<br>• History of Regulatory Violations?<br>   o  yes |
| 6. | Huntleigh Securities Corporation | • Formed in Missouri on 05/12/1997<br>• The main office is located in St. Louis, MO<br>• History of Regulatory Violations?<br>   o  yes |

EXHIBIT D

Background and Regulatory History of CMI Broker-Dealers and Investment Advisors

|  | Name of Broker Dealer/ Investment Advisors Who Sold CMI Bonds | Firm's Regulatory History |
|---|---|---|
| 7. | MMR, Inc | • Formed in Kansas in 08/02/1985<br>• The main office is in Wichita, KS<br>• History of Regulatory Violations?<br>  ○ yes |
| 8. | Wellstone Securities, Inc | • Formed in Georgia on 04/02/2002<br>• The main office is in Cumming, GA<br>• History of Regulatory Violations?<br>  ○ yes |

EXHIBIT D

IS 44 (Rev. 2/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.

## I. (a) PLAINTIFFS

CLAUDIA SCHORRIG

**09-80973**

### DEFENDANTS

IBM SOUTHEAST EMPLOYEES' FEDERAL CREDIT UNION, LARY B. McCANTS, CHRISTI SEAY, JAY JONES, and BARBARA LESCHANDER,

(b) County of Residence of First Listed Plaintiff   **Palm Beach**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   **Palm Beach**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**CIV-RYSKAMP**

(c) Attorney's (Firm Name, Address, and Telephone Number)
David A. Rothstein, Esq., Dimond Kaplan & Rothstein, P.A.
2665 S. Bayshore Drive, PH2-B, Coconut Grove, Florida 33133
Tel: 305-374-1920

**MAGISTRATE JUDGE**
**VITUNAC**

FILED by _AIS_ D.C.

**JUN 30 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

(d) Check County Where Action Arose: ☐ MIAMI- DADE  ☐ MONROE  ☐ BROWARD  ☑ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE  ☐ HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☑ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**09-CV-80973 — Ryskamp Nitunac**

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)   and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☑ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☑ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment / **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations / ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 550 Civil Rights | ☐ 463 Habeas Corpus-Alien Detainee | | |
| | ☐ 440 Other Civil Rights / ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | ☐ 950 Constitutionality of State Statutes |

## V. ORIGIN (Place an "X" in One Box Only)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).
(See instructions second page):
a) Re-filed Case ☐ YES ☑ NO   b) Related Cases ☐ YES ☑ NO
JUDGE _____   DOCKET NUMBER _____

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

Pursuant to Section 12 (a) (2) & 15 of the Securities Act of 1933, Plaintiff brings claims for securities violations.

LENGTH OF TRIAL via _5_ days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $  5,000,000.00 +
CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE   June 30, 2009

FOR OFFICE USE ONLY
AMOUNT _$350.00_   RECEIPT # _1003745_

06/30/09