THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.: 09-CV-80973/RYSKAMP

CLAUDIA SCHORRIG, URSULA
KUZENKO, and JOLENE SULLIVAN,
on their own behalf and on behalf of
those similarly situated,

      Plaintiffs,

v.

IBM SOUTHEAST EMPLOYEES'
FEDERAL CREDIT UNION,

      Defendant.
_____/

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

      Plaintiffs, Claudia Schorrig, Ursula Kuzenko, and Jolene Sullivan, on their own behalf and on behalf of all Class Members similarly situated, pursuant to Federal Rule of Civil Procedure 23, hereby submit this Motion for Class Certification and Supporting Memorandum of Law seeking an order certifying this action as a class action and appointing Plaintiffs as Class representatives.

## I. INTRODUCTION

      On January 15, 2010, Plaintiffs filed their Second Amended Class Action Complaint (the "Complaint") asserting a single claim for negligence against IBM Southeast Employees' Federal Credit Union (the "Credit Union") arising out of a common course of conduct (D.E. 38-1).[1] Plaintiffs' Complaint seeks damages on behalf of a putative class of all Credit Union members who purchased Cornerstone Ministries bonds, through Wellstone Securities, LLC from July 30, 2004 through September 5, 2008 (the "Class"). Following this Court's January 21, 2010 Order denying the Credit Union's Motion to Dismiss (D.E. 40), on February 10, 2010, the Credit Union filed its Answer and Affirmative Defenses (D.E. 43). Accordingly, this case is now at issue.

---

[1] The Complaint originally stated claims against the Credit Union and other defendants for numerous Federal and State securities laws violations.

The Plaintiffs' Complaint alleges that Defendant: (i) negligently failed to conduct adequate due diligence into Wellstone Securities, LLC ("Wellstone") – a now defunct broker-dealer established and controlled by fraudsters – before providing Wellstone with unfettered access to Plaintiffs and all Class members by allowing Wellstone to operate inside of Defendants' own branches; and (ii) negligently failed to disclose to Plaintiff and the Class that Wellstone was, in essence, a bucket-shop rife with fraud, facts that Defendant could have discovered with even minimal due diligence. As alleged in the Complaint, that negligence caused Plaintiffs and Class members to suffer millions of dollars in damages in the form of lost retirement savings.

## II. FACTUAL BACKGROUND

This action arises out of Defendant's negligent failure to conduct due diligence or disclose facts about Wellstone, which failure provided Wellstone with the opportunity to sell Plaintiff and class members bonds issued by Cornerstone Ministries Investments ("Cornerstone Ministries"), a close affiliate of Wellstone. Formed in 1996, Cornerstone Ministries issued bonds from 1996 through 2007, purportedly to fund investments in building churches, retirement homes, and child-care centers.[2] But Cornerstone Ministries filed for bankruptcy in February 2008, failing under the weight of its own fraud.[3] As such, the Cornerstone Ministries bonds purchased by Plaintiffs and Class members through Wellstone became worthless.[4]

Cornerstone Ministries was the subject of numerous enforcement actions by the state securities commissions of Maine, Ohio, Indiana, New Jersey, Colorado, Kansas and other states, all resulting from inaccurate statements in its prospectuses.[5] All of those enforcement actions resulted

---

[2]Comp. at ¶8. References to Plaintiffs' Second Amended Complaint shall be cited as "Comp. at ¶___."

[3]*See In Re Cornerstone Ministries*, Case No. 08-20355 (N.D. Ga.).

[4]Comp. at ¶¶ 34, 35.

[5]*Id.* at ¶¶ 9, 30. Specifically, the prospectuses misrepresented that Cornerstone Ministries common stock was approved for listing on the Chicago Stock Exchange under the symbol "IHN." That was not true; Cornerstone Ministries securities were never listed nor approved for listing on any exchange.

in either Cornerstone Ministries consenting to an administrative settlement or losing the action on the merits.[6]

The broker-dealer Wellstone had been created by Cornerstone Ministries for the purpose of marketing Cornerstone Ministries' own securities, which is strictly forbidden by pertinent regulations.[7] In an effort to evade such regulations, Cornerstone Ministries "gave" Wellstone to a third entity, the African American Church Growth Foundation, which was also closely affiliated with Cornerstone Ministries, and which was, in fact, largely owned by principals of Cornerstone Ministries and its associates.[8] Thus Wellstone acted as the chief market-maker for Cornerstone Ministries bonds.[9] And as the Court-appointed Examiner in the Cornerstone Ministries bankruptcy noted, both Wellstone and Cornerstone Ministries flouted the law for the benefit of their principals, all to the detriment of bond buyers like Plaintiffs and Class members.[10]

Despite obvious and easily discovered warning signs regarding the Wellstone fraud, Defendant failed to perform even minimal due diligence into Wellstone.[11] Nonetheless, Defendant invited Wellstone to set up shop in the Credit Union's branches, placed signs advertising Wellstone in its lobbies, and clothed Wellstone in the Credit Union's trappings of safety and reliability by touting Wellstone's and its representatives' "wealth of experience."[12] The Credit Union even determined the particular investment products (including Cornerstone Ministries bonds) that Wellstone could offer and sell to Credit Union members, and then distributed a list of those

---

[6]Comp. at ¶ 9.

[7]*Id.* at ¶ 10.

[8]*Id.* In fact, several Cornerstone Ministries employees, directors, and officers apparently worked in senior positions at Wellstone.

[9]*Id.* at ¶ 13.

[10]*Id.*

[11]*Id.* at ¶¶ 22, 30.

[12]Comp. at ¶¶ 23-25. *See* Credit Union Newsletter, Summer 2003, found via the internet at http://www.ibmsecu.org/htm/news.BN0603.asp.

approved products to the Wellstone representatives located in the Credit Union's offices.[13]

The Credit Union then profited from that failure to conduct due diligence into Wellstone at the direct expense of its own members. Specifically, the Credit Union received various fees from Wellstone based upon the level of sales by Wellstone representatives to Credit Union members.[14] Essentially, the more securities (including Cornerstone Ministries bonds) that Wellstone sold, the more money the Credit Union earned.[15] And the relationship between the Credit Union and Wellstone was so direct that the Credit Union actually exercised control over the hiring and firing of Wellstone employees operating within the confines of the Credit Union.[16] The Credit Union then exercised that power to exert ever-increasing pressure upon Wellstone employees to sell securities to Credit Union members so that the Credit Union could maximize the fees it was earning.[17]

Following the collapse of Cornerstone Minsitries, the Credit Union ejected Wellstone from its premises. Wellstone is now defunct. As a result of the Wellstone debacle, Larry B. McCants, the CEO of the Credit Union, subsequently sent a letter to all Class members announcing that a new broker-dealer would replace Wellstone, and that this new broker-dealer was chosen " with much due diligence."[18] But the Defendant's newfound desire to subject its captive broker-dealer to due diligence obviously comes too late to protect the Class members who lost their savings in Cornerstone Ministries fraudulent bonds.

Each of the Defendant's aforementioned actions were undertaken by the home office and uniformly applied to Credit Union members. That is to say, Defendant's negligent acts represented a common course of conduct that led to all Class members' losses at the hands of Wellstone. As

---

[13] Comp. at ¶ 26.

[14] *Id.* at ¶ 28.

[15] *Id.*

[16] *Id.* at ¶ 29.

[17] *Id.*

[18] *Id.* at ¶ 27 and Exhibit B.

such, Plaintiffs' Complaint alleges that Defendant was negligent in its failure to: (1) perform even minimal due diligence that would have protected Plaintiff and Class members from harm; and (2) warn Plaintiffs and Class members about Wellstone. In short, Plaintiffs have alleged that the Credit Union failed to act in ways that affected the Plaintiffs and other Class members in exactly the same way, and thus, this claim is properly subject to class treatment.

### III. ARGUMENT

**A.   Certification of the Proposed Class Would Serve the Policies Underlying Class Litigation**

The United States Supreme Court and federal courts throughout the country have consistently recognized the necessity of class actions to effectively redress and deter unlawful acts when a uniform course of conduct affects large numbers of persons the same way.[19] Class actions serve an important function in our system of civil justice because they permit Plaintiffs to "vindicat[e] the rights of individuals who otherwise might not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost."[20]

Moreover, courts in the Southern District of Florida and elsewhere in this Circuit have readily certified class actions against defendants who engage in misconduct that arises from a single course of conduct affecting class members in essentially the same way.[21] And the policies favoring the class action mechanism are particularly well served where a plaintiff asserts common negligence

---

[19] *See, e.g., Basic, Inc. v. Levinson*, 485 U.S. 224 (1988) (securities fraud class action certified); *In Re Tri-State Crematory Litig.*, 215 F.R.D. 660 (N.D. Ga. 2003) (negligence, breach of contract class certified)*; Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315 (S.D. Fla. 1996) (securities fraud/RICO/common law fraud class certified).

[20] *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338 (1980); *see also Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99-100 n. 11 (1981) ("Rule 23 expresses 'a policy in favor of having litigation in which common interests, or common questions of law or fact prevail, disposed of where feasible in a single lawsuit.'") (citation omitted).

[21] *Medine v. Washington Mut., F.A.*, 185 F.R.D. 366, 371 (S.D. Fla. 1998); *Walco*, 168 F.R.D. at 333; *Davis v. Southern Bell Tel. & Tel. Co.*, 1993 WL 593999 (S.D. Fla. 1993); *In Re Healthsouth Sec. Litig.*, 261 F.R.d. 616, 626-27, 646 (N.D. Ala. 2009).

claims.[22] Indeed, numerous federal courts have found class treatment to be appropriate where a claim arises from a single course of negligent conduct.[23] As the Sixth Circuit recognized in *Sterling* "where the defendant's liability can be determined on a class-wide basis because the cause of the disaster is a single course of conduct which is identical for each of the plaintiffs, a class action may be the best suited vehicle to resolve such a controversy."[24] That view has been reflected in the repeated certification of negligence claims in this Circuit.[25] As described in more detail herein, this case is equally well-suited for class treatment.

**B.**   **The Proposed Class Satisfies the Requirements of Federal Rule of Civil Procedure 23**

Federal Rule 23(a) provides four (4) prerequisites to certification of a class action:

1. The class is so numerous that joinder of all members is impracticable;

2. There are questions of law or fact common to the class;

3. The claims or defenses of the representative parties are typical of the claims or defenses of the class; and

4. The representative parties will fairly and adequately protect the interests of the class.[26]

Those prerequisites are commonly referred to as: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.[27]

---

[22] *See, e.g., Tri-State*, 215 F.R.D. at 698.

[23] *See, e.g., In Re Telectronics Pacing Sys. Inc.*, 172 F.R.D. 271, 288 (S.D. Ohio 1997) *citing Sterling v. Velsicol Chem. Corp.,* 855 F.2d 1188, 1196-97 (6th Cir. 1988) (certifying class of people exposed to contaminated water); *Watson v. Shell Oil Co.*, 979 F.2d 1014, 1023 (5th Cir. 1992) (certifying class of individuals injured in a refinery explosion) *reh'g granted,* 990 F.2d 805 (5th Cir. 1993) *appeal dismissed*, 53 F.3d 663 (5th Cir. 1994).

[24] *Sterling*, 855 F.2d at 1197.

[25] *See, e.g., Sher v. Raytheon, Inc.*, 261 F.R.D. 651 (M.D.Fla. 2009) (negligence claim based on ground water contamination); *Smith v. Georgia Energy USA, LLC*, 259 F.R.D. 684, 693 (S.D. Ga. 2009) ("Plaintiff's evidence establishes liability, or not, on a common basis as to the class members' claims"); *National Air Traffic Controllers Ass'n v. Dental Plans, Inc.*, 2006 WL 1663286 *6 (N.D. Ga. 2006) (negligence in design and implementation of benefits plan).

[26] Fed. R. Civ. P. 23(a).

[27] *Walco*, 168 F.R.D. at 323.

Rule 23 also requires that one of the provisions of Rule 23(b) be satisfied. Plaintiffs proceed here under Rule 23(b)(3), which authorizes the certification of a class action when "questions of law or fact common to class members predominate over any questions affecting only individual members, and [when] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[28] The two requirements of Rule 23(b)(3) are generally referred to as: (1) predominance, and (2) superiority.[29]

In deciding whether to certify a class, a court should focus on whether the Rule 23 requirements have been met; the Court should not conduct an exploration of the merits.[30] As such, in deciding the propriety of class treatment, the question is not whether plaintiff has stated a cause of action or will prevail on the merits, but rather whether she meets Rule 23's requirements.[31] In short, the only matters pertinent to this inquiry are the elements of the Rule itself and the factual allegations of the Complaint, which are accepted as true for purposes of the class certification analysis.[32] Moreover, Rule 23 is to be "liberally construed" in order to meet its objectives.[33] As such, "any error, if there is to be one, should be committed in favor of allowing the class action."[34]

Here, the requirements of Rules 23(a) and (b)(3) are met. As alleged in the Complaint, the Credit Union members who bought Cornerstone Ministries bonds through Wellstone numbers in the

---

[28] Fed.R.Civ.P. 23(b)(3).

[29] *Walco,* 168 F.R.D. at 323.

[30] *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974); *Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718, 722 (11th Cir. 1987), *cert. denied*, 485 U.S. 959 (1988).

[31] *See Miller v. Mackey Int'l, Inc.*, 452 F.2d 424, 427 (5th Cir. 1971); *see also Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1557 (11th Cir. 1986).

[32] *See, e.g., Blackie v. Barrack*, 524 F.2d 891, 901 n. 17 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976); *Westlake v. Abrams*, 565 F. Supp. 1330, 1337 (N.D. Ga. 1983).

[33] *Walco*, 168 F.R.D. at 323.

[34] *Hoffman Elec., Inc. v. Emerson Elec. Co.*, 754 F. Supp. 1070, 1075 (W.D. Pa. 1991); *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir. 1968), *cert. denied*, 394 U.S. 928 (1969); *Medine,* 185 F.R.D. at 369.

hundreds, and thus are so numerous that joinder is impracticable; this action is based upon a single question of law and fact that is common to the Class; the named Plaintiffs' claims are typical of those of their fellow Credit Union members; the three named Plaintiffs and their counsel will fairly and adequately protect the interests of the Class; common questions of law and fact predominate; and the class action plainly is superior to other available methods for the fair and efficient adjudication of this controversy. Plaintiffs respectfully submit that class certification is appropriate.

### 1. The Requirements of Rule 23(a) Are Satisfied Here

#### a. Rule 23(a)(1) Is Satisfied: Members of the Class Are Sufficiently Numerous that their Joinder Is Impracticable

Rule 23(a)(1) requires that the members of a class be so numerous that joinder of all such individuals is impracticable. It should be noted that in this context, "[i]mpracticability does not mean impossibility."[35] It means only that it would be difficult or inconvenient to join all members of the Class in a single proceeding.[36] While "there exists no definite standard as to the size a given class must attain in order to satisfy Rule 23(a)(1),"[37] a "court may make common sense assumptions in order to support a finding of numerosity."[38] As the Second Circuit has noted, "[a] leading treatise concludes, based on prevailing precedent, that the difficulty in joining as few as 40 class members should raise a presumption that joinder is impracticable."[39]

Plaintiffs' Complaint alleges that the class is believed to "number in the hundreds."[40] Based

---

[35] *Walco,* 168 F.R.D. at 324.

[36] *See, e.g., In Re Alexander Grant & Co. Litig.*, 110 F.R.D. 528 (S.D. Fla. 1986) (over 300 partners of accounting firm satisfies numerosity)(Gonzalez, J.). *See also Fifth Moorings Condominium, Inc. v. Shere*, 81 F.R.D. 712, 716 (S.D. Fla. 1979) (Atkins, J.); *Wehner v. Syntex Corp.*, 117 F.R.D. 641, 643 (N.D. Cal. 1987).

[37] *Tapken v. Brown*, 1992 U.S. Dist. LEXIS 11744, Fed. Sec. L. Rep. (CCH) ¶ 96,805 (S.D. Fla. 1992), (Marcus, J.).

[38] *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030,1039 (5th Cir. 1981).

[39] *Robidoux v. Celani*, 987 F.2d 931, 936 (2nd Cir. 1993), *citing* 1 Herbert B. Newberg, Newberg on Class Actions § 3.05, at 141-42 (2d Ed. 1985).

[40] Comp. at ¶ 43.

on those figures, this Court can readily conclude that numerosity exists here. In fact, class actions have been certified with fewer than 20 members.[41] Accordingly, the numerosity requirement is readily satisfied here based solely on the number of Class members, and this Court should not hesitate to find that the numerosity required by Rule 23(a)(1) exists here.

> **b.     Rule 23(a)(2) Is Satisfied: There Are Questions of Law and Fact Common to the Class.**

Rule 23(a)(2) requires that there be "questions of law or fact common to class members." Fed. R. Civ. P. 23(a)(2). Courts in this circuit have taken a common-sense approach to this commonality requirement by recognizing that slight differences in Class members' positions will not defeat class certification.[42] Indeed, several courts – including courts in this District – have held that "a <u>single</u> issue common to the proposed Class is sufficient to satisfy the Rule 23(a)(2) requirements."[43] As this standard suggests, "[t]he threshold requirements of commonality and typicality are not high."[44] It has also been widely recognized that where, as here, allegations of wrongdoing involve a common course of conduct by a defendant, the Class members' claims will typically involve common questions of law or fact.[45]

The present action is based upon common essential questions of law and fact that apply in

---

[41]*See, e.g., Grant v. Sullivan*, 131 F.R.D. 436, 446 (M.D. Pa. 1990) ("a court may certify a class even if it is composed of as few as 14 members."); *See also Armstead v. Pingree*, 629 F. Supp. 273, 279 (M.D. Fla. 1986) (class of 25 certified).

[42]*See, e.g., Haitian Refugee Center, Inc. v. Nelson*, 694 F. Supp. 864, 877 (S.D. Fla. 1988) (Atkins, J.), *aff'd*, 872 F.2d 1555 (11th Cir. 1989); *Fifth Moorings Condominium, Inc.*, 81 F.R.D. at 716-17. *See also Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984), *cert. denied*, 470 U.S. 1004 (1985).

[43]*Georgia Energy,* 259 F.R.D. at 690 (emphasis supplied); *In re Telectronics Pacing Sys., Inc., Accufix Atrial "J" Leads Prod. Liab. Litig.*, 164 F.R.D. 222, 227 (S.D. Ohio 1995). *See also, Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 56-57 (3d Cir. 1994); *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001); *Pottinger v. City of Miami*, 720 F. Supp. 955, 958 (S.D. Fla. 1989).

[44] *Shipes v. Trinity Indus.*, 987 F.2d 311, 316 (5th Cir. 1993).

[45]*See Kornberg*, 741 F.2d at 1337; *Fabricant*, 202 F.R.D. at 313; *Walco*, 168 F.R.D. at 325; *In re Amerifirst Sec. Litig.*, 139 F.R.D. 423, 428 (S.D. Fla. 1991); *Powers v. Stuart-James Co.*, 707 F. Supp. 499, 502 (M.D. Fla. 1989); *Haitian Refugee Center, Inc.*, 694 F. Supp. at 877.

exactly the same manner to each Class member, to wit, whether the Credit Union owed a duty to its members to discover and/or disclose to its members material, adverse information about Wellstone and Cornerstone Ministries, and whether the breach of that duty damaged members of the class.

Accordingly those common issues of law and fact not only exist in this case, they predominate over any individual issues that might be raised by the allegations of the Complaint. Simply, if the three named Plaintiffs and every Class member were each to bring an individual action, in order to establish liability they would all attempt to prove the exact same thing: that the Credit Union owed each a duty to conduct due diligence and investigate Wellstone prior to associating with Wellstone and recommending that its members use Wellstone as their broker-dealer, that the Credit Unioned owed each a duty to disclose to them that Wellstone was a fraud, and that the Credit Union's failure to take any of those necessary actions constituted a breach of its duty.

Where, as here, the facts as alleged show that a defendant's course of conduct violated a duty in exactly the same manner for an entire putative class, the commonality requirement is met.[46] In short, because the elements of Plaintiffs' single negligence claim focuses on a single course of conduct of the Credit Union, there will be issues of law or fact common to this one Defendant.[47] In fact, after resolution of the above common question, all that will remain for each individual claimant is the purely mechanical act of computing damages, which does not defeat certification.[48]

        **c.**    **Rule 23(a)(3) Is Satisfied: Plaintiffs' Claims Are Typical of Those of the Class**

Rule 23(a) next requires that the claims or defenses of the class representatives be typical of the claims or defenses of the class.[49] "Rule 23 does not require that the representative Plaintiff have endured precisely the same injuries that have been sustained by the class members, only that

---

[46] *See Shankroff v. Advest*, 112 F.R.D. 190, 193 (S.D.N.Y. 1986) *citing Dura-Bilt Corp. v. Chase Manhatan Corp.*, 89 F.R.D. 87,93 (S.D.N.Y. 1981).

[47] *See McMahon Books*, 108 F.R.D. at 38.

[48] *See Dura-Bilt.*, 89 F.R.D.at 93.

[49] *See Fabricant*, 202 F.R.D. at 313.

the harm complained of be *common* to the class. . ."[50] As the Court in *Kornberg* noted:

> A class representative's claims or defenses must be typical of the claims or defenses of the class. In other words, there must be a nexus between the class representative's claims or defenses and the common questions of fact or law which united the class. A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory. Typicality, however, does not require identical claims or defenses. A factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class.[51]

Typicality is therefore established if the claims of the representative plaintiff arise from the same event, practice, or course of conduct by a defendant, and are based on the same legal theory.[52] Typicality will not be destroyed by minor factual variations.[53] Indeed, as Judge Hoeveler noted in *In Re Amerifirst Secs. Litig*, "a strong similarity of legal issues will suffice despite substantial factual differences."[54] As with commonality, "[t]he 'threshold for establishing typicality is low[.]'"[55]

Here, there is nothing of any substance to distinguish Plaintiffs' claims against the Credit Union from those of any other Credit Union member who was sold Cornerstone Ministries bonds by Wellstone. As such, Plaintiffs' claims arise out of the same course of conduct and are based upon the same legal theory as those of other Class members. These three named Plaintiffs and each member of the proposed Class were injured by the same negligent acts of the Credit Union. In short, all members of the Class, including the named Plaintiffs, have exactly the same types of claims.

Moreover, there is no conflict or antagonism over any issue as between the Class

---

[50]*Hassine v. Jeffes*, 846 F.2d 169, 177 (3d Cir. 1988) (emphasis in original).

[51]*Kornberg*, 741 F.2d at 1337.

[52]*See Walco*, 168 F.R.D. at 326.

[53]*See Kornberg,* 741 F.2d at 1337; *Eisenberg,* 766 F.2d at 786.

[54]*In Re Amerifirst Secs. Litig*, 139 F.R.D. at 428; *See also CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 696-97 (S.D. Fla. 1992); *Pottinger*, 720 F. Supp. at 958; *In Re Alexander*, 110 F.R.D. at 534-35.

[55]*Seidman v. American Mobile Sys, Inc.*, 157 F.R.D. 354, 360 (E.D. Pa. 1994) (citations omitted); *see also Shipes*, 987 F.2d at 316.

representatives and the Class members at large, as the named Plaintiffs have the incentive to prove the entire case on behalf of all members of the Class. The Complaint here alleges a unified, common law failure by the Credit Union. By proving that the Credit Union failed to investigate and conduct due diligence as to Wellstone prior to inviting Wellstone on to its premises and recommending its services to its members, the named Plaintiffs prove the case of all absent Class members. "As long as Plaintiffs assert, as they do here, that Defendants committed the same wrongful acts in the same manner against all members of the class, they establish the necessary typicality."[56] The typicality requirement is clearly satisfied here.

### d. Rule 23(a)(4) Is Satisfied: The Plaintiffs and Class Counsel Will Fairly and Adequately Protect the Interests of the Class

The adequacy requirement of Rule 23(a)(4) consists of two components. First, counsel for the Class representatives must possess the competence to undertake the particular litigation. Second, the Court must find that the Class litigants are neither involved in collusive litigation nor have interests antagonistic to other Class members.[57] In class actions generally, adequacy of representation will be presumed. In fact, "[a]bsent any conflict between the interests of the representative and other purchasers, and absent any indication that the representative will not aggressively conduct the litigation, fair and adequate protection of the Class may be assumed."[58] Both elements of the adequacy test are met here.

As to the first component, the Eleventh Circuit has noted that Rule 23(a)(4) does not require that "the named Plaintiffs demonstrate to any particular degree that individually they will pursue

---

[56]*In re Amerifirst Secs. Litig.*, 139 F.R.D. at 429.

[57]*See Kirkpatrick*, 827 F.2d at 726-28; *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985); *CV Reit*, 144 F.R.D. at 698; *In Re Alexander Grant & Co. Litig.*, 110 F.R.D. at 535. *See also Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

[58]*Guarantee Ins. Agency Co. v. Mid-Cont'l Realty Corp.*, 57 F.R.D. 555, 565-66 (N.D. Ill. 1972) (citation omitted).

with vigor the legal claims of the Class."[59]  Instead, the focus is whether counsel exhibit the desire and expertise to prosecute the class action vigorously.[60]  Plaintiffs' counsel in this case are experienced in class action litigation and possess the requisite skill, ability, and experience to represent the Class in this action, and the Class will therefore receive the effective representation to which it is entitled.[61]

And as to the second component, each of the three named Plaintiffs has been damaged as a result of the Credit Union's common course of wrongdoing, and each is committed to the vigorous prosecution of this case.  In this respect the named Plaintiffs are on equal footing with those in *Walco*, where the court found that "[t]he named Plaintiffs and the Class members thus share the common objective of establishing Defendants' liability and maximizing the recovery so that they can get as much of their investments back as possible."[62]  Moreover, Plaintiffs' interests are not antagonistic to the interests of any other Class members.  Rather, the interests of all Class members are aligned, and the named Plaintiffs will fairly and adequately protect those interests.  Because these Plaintiffs have retained experienced and skilled counsel and possess interests aligned with the Class, they have satisfied the adequacy requirement of Rule 23(a)(4).

### 2. This Action Satisfies the Requirements of Rule 23(b)(3)

In addition to fulfilling the four requirements of Rule 23(a), Plaintiffs must satisfy one of the requirements of Rule 23(b).  That provision provides, in pertinent part:

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> \* \* \*
>
> (3) the Court finds that the questions of law or fact common to class members predominate over any questions affecting only individual

---

[59] *Kirkpatrick*, 827 F.2d at 727.

[60] *Id.* at 726.

[61] In the event that the competence of Plaintiffs' counsel is disputed by Defendant, a copy of Plaintiffs' counsels' firm resumes will be made available for the Court's consideration.

[62] *Walco*, 168 F.R.D. at 329.

>members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Those requirements of "predominance" and "superiority" are readily satisfied here.

### a. Common Questions of Law and Fact Predominate Over Any Individual Questions Affecting the Members of the Class

In determining whether common questions predominate, it is well established that the Court's inquiry should be directed primarily towards the issue of liability. As one court explained,

>Rule 23(b)(3) does not require that all questions of law or fact be common; it only requires that the common questions **predominate** over individual questions. Courts generally focus on the liability issue in deciding whether the predominance requirement is met, and if the liability issue is common to the class, common questions are held to predominate over individual questions.[63]

The critical issues of law and fact raised in this action are whether the Credit Union was required to conduct due diligence regarding Wellstone before recommending it to Credit Union members, and whether its failure to conduct such due diligence breached its duties to its members. This issue is common to all members of the Class, is not extraordinarily complex, and will clearly predominate in this case.[64] As the court noted in *National Air*:

>On the question of predominance, it is not necessary that all questions of law or fact be common. Nevertheless, "the issues in the class action that are subject to generalized proof and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." The individual Plaintiffs allege that the . . . Defendants breached their duty to exercise reasonable care . . . As previously discussed, these issues of law and fact are common to the Individual Plaintiffs and the class and predominate over the issue of individual damages.[65]

Moreover, it is clear that any individual questions pertaining to damages do not bar class

---

[63]*Dura-Bilt Corp.*, 89 F.R.D. at 93 (citations and footnote omitted); s*ee also* 4 H. Newberg, *Newberg on Class Actions* §§4.21 and 4.25 (1992).

[64]*See, e.g., Eisenberg,* 766 F.2d at 786.

[65]*National Air*, 2006 WL 1663286 at *5, *citing Cooper v. Southern Co.*, 390 F.3d 695, 722 (11th Cir. 2004)(citations omitted)  Notably, the *National Air* court reached this conclusion with regard to negligence claims.   *See also Medine*, 185 F.R.D. at 371.

certification.[66]  In any event, damages here will be calculated by reference to the amounts invested by each Class member in Cornerstone Ministries bonds, a completely mechanical exercise.  With common issues predominating over any individual issues in this case, the first prong of Rule 23(b)(3) is satisfied.

### b. A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of this Controversy

In addition to mandating the predominance of common questions, Rule 23(b)(3) requires the Court to determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Virtually all of the previously-cited authorities have recognized that the class action is superior to other available methods for the fair and efficient adjudication of a controversy affecting a large number of individuals injured by a common scheme.  As the court explained in *Sher*:

> In many respects, the predominance analysis . . . has a tremendous impact on the superiority analysis for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims.[67]

Rule 23(b)(3) instructs a court to consider the following factors when attempting to make this determination as to whether a class action is superior to other available methods:

> (A) the interest of members of the class in individually controlling the prosecution ... of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by ... members of the class; (C) the desirability ... of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

Those factors all lead to the conclusion that class certification is a superior method of

---

[66]*See, e.g., Tri-State*, 215 F.R.D. at 696; *Kornberg*, 741 F.2d at 1337; *CV Reit, Inc.*, 144 F.R.D. at 696; *see also, In re: Carbon Dioxide Antitrust Litig.*, 149 F.R.D. 229, 234 (M.D. Fla. 1993) (certifying antitrust class action even though damage issues in such actions are generally more individualized than in fraud cases.).

[67]261 F.R.D. at 651 *quoting Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir 2004).

resolving this controversy. First, notwithstanding the pendency of this suit, undersigned counsel is aware of no other actions that have been brought on behalf of Cornerstone Ministries bond holders since the collapse of the investment fraud, and certainly no other actions against this Defendant. Indeed, all of the Class members have a unified interest in proving that the Credit Union violated its common law duties to Credit Union members by failing to investigate Wellstone and negligently inviting Wellstone on to its premises. And the fact that no such actions have been initiated suggests that the cost and expenses of individual actions, when weighed against the individual recovery obtainable, has been deemed to be prohibitive by potential claimants. Where, as here, "class members 'are in a poor position to seek legal redress, either because they do not know enough or because such redress is disproportionately expensive,' a class action is particularly appropriate."[68]

Next, the fact that no other litigation relating to Plaintiffs' claims has been commenced by members of the Class also militates in favor of class certification for the reason that it "negates the threat of inconsistent adjudications."[69] Furthermore, the desirability of concentrating the litigation in this forum heavily favors class certification; the alternatives to certifying a class action are either no recourse for the scores of persons for whom the courthouse would, as a practical matter, be unavailable. Finally, there are no apparent difficulties likely to be encountered in the management of this matter as a class action, especially given its relatively small size. While hundreds of individual lawsuits pertaining to the same issues would be wildly inefficient, there would be no meaningful managerial issues presented by a several-hundred-person Class. There can thus be no doubt that the prosecution of this case as a class action will "achieve economies of time, effort and expense, and promote uniformity of decisions as to persons similarly situated."[70] This matter, accordingly, is ripe for class certification.

---

[68] *In re Amerifirst Secs. Litig.*, 139 F.R.D. at 435 (citation omitted).

[69] *Walco*, 168 F.R.D. at 337.

[70] *Fifth Moorings,* 81 F.R.D. at 719.

### 3. Plaintiffs' Counsel Satisfy the Requirements of Rule 23(g)

Finally, Rule 23(g) complements Rule 23(a)(4)'s adequacy requirement by focusing on counsel's qualifications. Rule 23(g)(1)(c) instructs the Court to consider the work counsel has done identifying or investigating claims, counsel's class action and complex litigation experience, counsel's knowledge of applicable law, and the resources counsel will commit to the case.

As discussed above, each of those considerations weighs in favor of proposed Class Counsel's adequacy. The undersigned are experienced in successfully handling complex securities, commercial, and class action litigation. In total, this depth of experience renders counsel knowledgeable of the applicable law. Further, the counsel have devoted significant effort to pursuing this action to date. Further still, the undersigned have researched and drafted several complaints, including the current operative Second Amended Complaint, and counsel vigorously litigated this matter to date. Going forward, the undersigned will commit the time and resources necessary to develop the case fully for trial. Accordingly, proposed Class Counsel satisfy the requirements of Rule 23(g)(1)(B).

### IV. Conclusion

For all of the foregoing reasons, Plaintiffs respectfully request that this Court enter an order pursuant to Rule 23 of the Federal Rules of Civil Procedure: (1) certifying this action as a class action on behalf of the proposed Class defined herein; (2) certifying Claudia Schorrig, Ursula Kuzenko, and Jolene Sullivan as Class representatives; and (3) designating Dimond Kaplan & Rothstein, P.A., Blum & Silver, LLP, and Sallah & Cox, LLC as co-lead counsel.

By:  /s/ David Rothstein, Esq.
  JEFFREY KAPLAN, ESQ.
   Fla. Bar No.: 39977
  DAVID ROTHSTEIN, ESQ.
   Fla. Bar No.: 0056881
  LORENZ MICHEL PRÜSS, ESQ.
   Fla. Bar No.: 581305
  DIMOND KAPLAN & ROTHSTEIN, P.A.
  Offices at Grand Bay Plaza
  2665 South Bayshore Drive, Penthouse 2B

        Miami, Florida 33133
        Telephone    (305) 374-1920
        Facsimile:    (305) 374-1961
        *Attorneys for Plaintiffs*

        SCOTT L. SILVER, ESQ.
        Fla. Bar No. 095631
        BLUM & SILVER, LLP
        12540 W. Atlantic Blvd.
        Coral Springs, FL 33071
        Telephone:    (954) 255-8181
        Facsimile:    (954) 255-8175
        *Attorneys for Plaintiffs*

        JAMES D. SALLAH, ESQ.
        Fla. Bar No. 0092584
        SALLAH & COX, LLC
        2101 Corporate Blvd., Suite 218
        Boca Raton, FL  33431
        Telephone:    (561) 989-9080
        Facsimile:    (561) 989-9020
        *Attorneys for Plaintiffs*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this April 15, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following counsel and parties of records, except as otherwise noted.

**Jeffrey Aaron Backman, Esq.**
**Robin Corwin Campbell, Esq.**
Adorno & Yoss
350 E Las Olas Boulevard, Suite 1700
Fort Lauderdale, FL 33301-4217
Telephone: 954-763-1200
Fax: 954-766-7800
jbackman@adorno.com

        By   /s/David Rothstein, Esq.
             David Rothstein, Esq.