## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

### CASE NO.: 09-CV-80973/RYSKAMP

CLAUDIA SCHORRIG, URSULA
KUZENKO, and JOLENE SULLIVAN,
on their own behalf and on behalf of
those similarly situated,

      Plaintiffs,

v.

IBM SOUTHEAST EMPLOYEES'
FEDERAL CREDIT UNION,

      Defendant.

_____/

### PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION

Plaintiffs, Claudia Schorrig, Ursula Kuzenko, and Jolene Sullivan, on their own behalf and

on behalf of all Class Members similarly situated, pursuant to Federal Rule of Civil Procedure 23,

hereby submit this Reply Memorandum in Support of their Motion for Class Certification, seeking

an order certifying this action as a class action and appointing Plaintiffs as Class representatives.

### I. INTRODUCTION

Defendant IBM Southeast Employees' Federal Credit Union ("Credit Union" or "Defendant")

has filed a Response in Opposition to Plaintiffs' Motion for Class Certification (D.E. 58)

("Opposition") that offers little in the way of any meaningful opposition to Plaintiffs' Motion for

Class Certification (D.E. 44). Defendant seeks to inject issues of individualized proof and reliance

into a case where it does not exist and is not necessary. Essentially, Defendant's Opposition appears

1

to be based on a complaint Defendant wishes had been filed by Plaintiffs rather than the complaint actually filed by Plaintiffs. Perhaps more critically, Defendant has supported its Opposition with case law that is often inapplicable, obsolete, or entirely supportive of Plaintiffs' Motion for Class Certification. Put simply, Defendant's Opposition raises no barriers to this Court granting Plaintiffs' Motion for Class Certification.

## II. ARGUMENT

### A. Plaintiffs Have Demonstrated that Each of the Requirements of Certification Are Met

Plaintiffs' Motion for Class Certification demonstrated that the Proposed Class satisfies the requirements of Fed. R. Civ. P. 23(a). In doing so, Plaintiffs' demonstrated:

> (1)  the class is so numerous that joinder of all members is impracticable;
> (2)  there are questions of law or fact common to the class;
> (3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4)  the representative parties will fairly and adequately protect the interests of the class[1]

In deciding whether to certify a class, a court should focus on whether the Rule 23 requirements have been met; the Court should not (as Defendant seems to suggest in its Opposition) conduct an exploration of the merits.[2] Stated differently, in deciding the propriety of class treatment, the question is not whether Plaintiffs have stated a cause of action or will prevail on the merits, but rather, whether the Plaintiffs meet Rule 23's requirements.[3] In short, the only matters pertinent to

---

[1]*See* Fed. R. Civ. P. 23(a). These requirements are frequently referred to as numerosity, commonality, typicality and adequacy.

[2]*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974); *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 722 (11th Cir. 1987), *cert. denied*, 485 U.S. 959 (1988).

[3]*See Miller v. Mackey Int'l, Inc.*, 452 F.2d 424, 427 (5th Cir. 1971); *see also Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1557 (11th Cir. 1986).

2

DIMOND KAPLAN & ROTHSTEIN, P.A.

OFFICES AT GRAND BAY PLAZA, 2665 SOUTH BAYSHORE DRIVE, PENTHOUSE 2B, MIAMI, FL 33133 • TEL. 305.374.1920 FAX. 305.374.1961

this inquiry are the elements of the Rule itself and the factual allegations of the complaint, which are accepted as true for purposes of the class certification analysis.[4]

Defendants's Opposition, suggests that Plaintiffs' are required to present evidence of the "facts of this case" to demonstrate class certification is warranted. The law, however, is clear (including the cases cited by Defendant) that Plaintiffs are not required to prove the merits of their case at this stage.[5] And, as to the facts necessary to establish certification, again, the well-pleaded allegations must be accepted as true. On that note, it is noteworthy that, aside from making non-specific references to a need to show more "facts," Defendant does not even articulate a particular factual predicate that is lacking. Put simply, the instant request for class certification presents a straight-forward legal analysis. The only analysis here is whether the putative class satisfies the requirements of Rule 23(a) and whether Plaintiffs' claims as framed by the complaint are appropriate for class certification.[6] And as explained below, when measured against the requirements of Rule 23(a), it follows that the instant request for certification should be granted.

### 1.    Plaintiffs have Demonstrated Numerosity

As alleged in the complaint, the putative class is believed to number in the hundreds. That number is not mere hypothesis, but rather is established by a review of the records filed by the

---

[4]*See Fuller v. Becker & Poliakoff*, 197 F.R.D. 697, 699 (M.D. Fla. 2000) ("In determining whether a class will be certified, the Court will not examine the merits of the case. Rather, the substantive allegations of the complaint should generally be taken as true."); *In re Carbon Dioxide Antitrust Lit.*, 149 F.R.D. 229, 232 (M.D. Fla 1993); *See e.g., Blackie v. Barrack*, 524 F.2d 891, 901 n. 17 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976); *Westlake v. Abrams*, 565 F. Supp. 1330, 1337 (N.D. Ga. 1983).

[5]*See City of St. Petersburgh v. Total Containment, Inc.*, 265 F.R.D. 630, 649 (S.D. Fla. 2010) ("A court is not to determine the merits of a case at the certification stage . . .."); *Brooks v. Southern Bell Tell & Tell Co.*, 133 F.R.D. 54, 56 (S.D. Fla. 1990) ("It is important to note that the particular merits of plaintiffs' claims are not issues to be considered in ruling on class certification."); *McCree v. Sam's Club*, 159 F.R.D. 572, 575 (M.D. Ala. 1995) ("the court's inquiry is limited to whether the requirements of Rule 23 have been satisfied; therefore the court shall not consider the merits of the plaintiff's claims.").

[6]*See Miller, supra.*

DIMOND KAPLAN & ROTHSTEIN, P.A.

OFFICES AT GRAND BAY PLAZA, 2665 SOUTH BAYSHORE DRIVE, PENTHOUSE 2B, MIAMI, FL 33133 • TEL. 305.374.1920 FAX. 305.374.1961

bankruptcy trustee in the Cornerstone Bankruptcy.[7]  Those records provide a more than reasonable

basis upon which this Court can determine numerosity.[8]  In fact, Defendant has actually attached

bankruptcy documents to its Opposition which it claims demonstrates there are more than 100

putative class members, more than enough to satisfy Rule 23(a)(1) and the requirements of the Class

Action Fairness Act ("CAFA") pursuant to which, this actions was brought.[9]  Put simply,

Defendant's Opposition is somewhat schizophrenic, opposing numerosity on the one hand, and

conceding the very facts that satisfy the numerosity requirement, on the other.[10]

Defendant's Opposition also erroneously inserts a nine (9) factor test for numerosity that has

no application here.[11]  But the very case law relied upon by Defendant makes clear that the use of

these factors are generally reserved for putative class actions in which the size of the putative class

falls into a "grey area" (between 21-40 class members) requiring other factors be evaluated.[12]  Given

that Defendant has conceded that the putative class numbers more than 100 members, such

---

[7]*See* Schedule of Cornerstone Bondholders, attached hereto as Exhibit A.

[8]*See Miles v. America Online, Inc.*, 202 F.R.D. 297, 302 (M.D. Fla. 2001) ("It is not necessary that a precise number of class members be known; plaintiffs may make reasonable and supported estimates as to the size of the proposed class"); *See also Fuller*, 197 F.R.D. at 699 (finding numerosity where defendant acknowledged likelihood of 200 class members).

[9] *See* 28 U.S.C. § 1332 (d)(5)(B).

[10]*See Id* at n. 8 ("the Credit Union does not concede that there are a "few hundred members." Based upon the filings in the Bankruptcy Action, the Credit Union believes that there are slightly more than 100 Credit Union members who did not convey their claims to the Private Actions Trust").

[11]The factors set forth in Defendant's Opposition are (1) the proposed class size; (2) judicial economy; (3) the nature of the action; (4) ease of identifying members' names and addresses; (5) geographic dispersion; (6) financial resources of members; (7) size of each plaintiff's claim; (8) the ability of the members to file individual suits; and (9) requests for prospective relief.

[12]*See Ansari v. New York Univ.*, 179 F.R.D. 112, 114-115 (S.D.N.Y 1998) ("In deciding this issue, particularly in cases falling into the gray area between 21 and 40 class members, courts must consider factors other than class size.")

DIMOND KAPLAN & ROTHSTEIN, P.A.

OFFICES AT GRAND BAY PLAZA, 2665 SOUTH BAYSHORE DRIVE, PENTHOUSE 2B, MIAMI, FL 33133 • TEL. 305.374.1920 FAX. 305.374.1961

evaluation is unnecessary.[13]

Defendant also points to the size of the recovery sought by the Proposed Class Representatives as evidence that each member of the class has a large financial stake thus making joinder impracticable. That argument is vitiated entirely by a recent Eleventh Circuit decision holding that at least one proposed class representative *must have a large financial stake to invoke the jurisdiction of this Court* where that action is brought pursuant to CAFA.[14]

Accordingly, there is no question that Plaintiffs have demonstrated that the putative class satisfies the numerosity requirement.

### 2.   Plaintiffs' Demonstrated Commonality

Plaintiffs' Class Certification Motion and complaint readily demonstrate that the putative class and Proposed Class Representatives satisfy Rule 23(a)(2)'s commonality requirement. Defendant's Opposition attempts to challenge commonality by creating a world where individualized proof of reliance and causation come into play. But, Plaintiffs' complaint requires no such proof. It is replete with common issues of fact and law, and is easily resolved by generalized proof. As such, commonality is easily satisfied.

Rule 23(a)(2) only requires that there be "questions of law or fact common to class

---

[13]*See* Opposition at n. 8. If the Court is inclined to review the class through these factors, the putative class still easily satisfies the numerosity requirement. A review of the list of bondholders attached at Exhibit A, demonstrates that class members are geographically dispersed and joinder of their actions would be impracticable. Moreover, while Defendant asserts that the "proposed class members have, on average, claims in excess of $50,000 each" that "average" only demonstrates that large numbers of class members have claims that fall well below that number, and thus likely would not have a significant enough financial stake in filing a separate action. In fact, Exhibit A demonstrates than many Cornerstone Bondholders purchased as little as $5,000 in bonds.

[14]*See Cappuccitti v. Directv, Inc.*, 2010 WL 2803093 at *4 (11th Cir. July 19, 2010) ("Where [the Plaintiff's] claim falls short, however, is the requirement that at least one plaintiff allege an individual amount in controversy over $75,000. . . There is simply nothing in the complaint to satisfy this essential requirement of CAFA action filed originally in federal court").

DIMOND KAPLAN & ROTHSTEIN, P.A.
OFFICES AT GRAND BAY PLAZA, 2665 SOUTH BAYSHORE DRIVE, PENTHOUSE 2B, MIAMI, FL 33133 • TEL. 305.374.1920 FAX. 305.374.1961

members."[15]   Courts in this circuit have taken a common-sense approach to this commonality requirement by recognizing that slight differences in Class members' positions will not defeat class certification.[16]   Indeed, "[t]he threshold requirements of commonality and typicality are not high."[17] And, where as here, allegations of wrongdoing involve a common course of conduct by a defendant, the Class members' claims will typically involve common questions of law or fact.[18]

In a transparent effort to convince this Court otherwise, Defendant misapplies this Court's opinion in *O'Brien v. J.J. Kislak Mortg. Corp.* to generate support for its position.[19]   But *O'Brien* is easily distinguished.   In *O'Brien*, the plaintiffs' TILA claim *did* require a fact intensive analysis.[20] Because this Court was required to consider whether each member of a vast mortgage lending network had imposed undisclosed finance charges and members of the proposed class had used differing members of that network, commonality was not present.

But no such analysis is required by the Court *here*.   The common questions at issue are based

---

[15] *See* Fed. R. Civ. P. 23(a)(2).

[16] *See, e.g., Haitian Refugee Center, Inc. v. Nelson,* 694 F. Supp. 864, 877 (S.D. Fla. 1988) (Atkins, J.), *aff'd,* 872 F.2d 1555 (11th Cir. 1989); *Fifth Moorings Condominium, Inc. v. Shere,* 81 F.R.D. 712, 716-17 (S.D. Fla. 1974).   *See also Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984), *cert. denied,* 470 U.S. 1004 (1985).   *See also Smith v. Georgia Energy USA, LLC,* 259 F.R.D. 684, 690 (S.D. Ga. 2009); *In re Telectronics Pacing Sys., Inc. Accufix Atrial "J" Leads Prod. Liab. Litig.,* 164 F.R.D. 222,227 (S.D. Ohio 1995); *Fabricant v. Sears Roebuck,* 202 F.R.D. 310, 313 (S.D. Fla. 2001); *Pottinger v. City of Miami,* 720 F. Supp. 955, 958 (S.D. Fla. 1989), each noting a *single* common issue is sufficient to satisfy the Rule 23(a)(2) commonality requirements.

[17] *Shipes v. Trinity Indus.,* 987 F.2d 311, 316 (5th Cir. 1993).

[18] *See Kornberg,* 741 F.2d at 1337; *Fabricant,* 202 F.R.D. at 313; *Walco Investments, Inc. v. Thenen,* 168 F.R.D. 315, 325 (S.D. Fla. 1996); *In re Amerifirst Sec. Litig.,* 139 F.R.D. 423, 428 (S.D. Fla. 1991); *Powers v. Stuart-James Co.,* 707 F. Supp. 499, 502 (M.D. Fla. 1989); *Haitian Refugee Center, Inc.,* 694 F. Supp. at 877.

[19] *See O'Brien v. J. I. Kislak Mortg. Corp.,* 934 F. Supp. 1348, 1356 (S.D. Fla. 1996).

[20] *Id.*

DIMOND KAPLAN & ROTHSTEIN, P.A.

OFFICES AT GRAND BAY PLAZA, 2665 SOUTH BAYSHORE DRIVE, PENTHOUSE 2B, MIAMI, FL 33133 • TEL. 305.374.1920 FAX. 305.374.1961

solely upon the acts of a single entitiy, the Credit Union and its negligence in placing Wellstone in Credit Union branches.[21]

Accordingly common issues of law and fact exist in this case and predominate over any individual issues that might be raised by the allegations of the complaint. Simply, if the three named Plaintiffs and every Class member were each to bring an individual action, in order to establish liability they would all attempt to prove the exact same thing: that the Credit Union owed each a duty to conduct due diligence and investigate Wellstone prior to placing Wellstone into Credit Union branches for the purpose of referring its members to Wellstone (an act for which the Credit Union was paid handsomely).

In short, because the elements of Plaintiffs' single negligence claim focus on a single course of conduct by the Credit Union, there will be issues of law or fact common to this one Defendant.[22] In fact, after resolution of the above common question, all that will remain for each class member is the purely mechanical act of computing damages, which does not defeat certification.[23]

### 3.    The Plaintiffs Have Demonstrated Typicality

Similarly, the putative class and named plaintiffs easily satisfy Rule 23(a)(3)'s "typicality" requirement. Contrary to Defendant's assertion, "Rule 23 does not require that the representative Plaintiff have endured precisely the same injuries that have been sustained by the class members,

---

[21]In fact, each named plaintiff's deposition testimony describes factual circumstances that are largely similar to one another and exemplify why commonality is present here.. *See* Claudia Schorrig Dep. Tr., p. 18, ln. 20- p. 21, ln 8; Jolene Sullivan Dep. Tr., p. 14, ln11- p. 16, ln 13; Ursula Kuzenko Dep. Tr., p. 17, line 1- p. 20, ln. 12. A copy of these transcript excerpts are attached hereto as composite Exhibit B.

[22]*See McMahon Books, Inc. v. Willow Grove Assoc.*, 108 F.R.D. 32, 38 (E.D. Penn. 1985).

[23]*See Dura-Bilt Corp. v. Chase Manhattan Corp.,* 89 F.R.D. 87, 93 (S.D.N.Y. 1981).

DIMOND KAPLAN & ROTHSTEIN, P.A.

OFFICES AT GRAND BAY PLAZA, 2665 SOUTH BAYSHORE DRIVE, PENTHOUSE 2B, MIAMI, FL 33133 • TEL. 305.374.1920 FAX. 305.374.1961

only that the harm complained of be *common* to the class. . ."[24]

Typicality is therefore established if the claims of the representative plaintiff arise from the same event, practice, or course of conduct by a defendant, and are based on the same legal theory.[25] Typicality will not be destroyed by minor factual variations.[26] Indeed, "a strong similarity of legal issues will suffice despite substantial factual differences."[27] And, as with commonality, "[t]he 'threshold for establishing typicality is low[.]'"[28]

Curiously, Defendant points to *Kornberg v. Carnival Cruise Lines, Inc.* (cited at length in Plaintiffs' Motion for Class Certification), as the only support for its erroneous assertion that the proposed Class Representatives' claims "are *not* typical" of putative class members' claims.[29] But, *Kornberg* demonstrates precisely why Plaintiffs' claims are typical of the claims of the putative class.[30]

In *Kornberg* the Eleventh Circuit reversed the district court's order decertifying a class action involving a claim of negligence. Specifically, the court noted:

> Judged by this standard, plaintiffs clearly present claims typical of the class. **The cause of action arises from a single event and there is no variation in legal theory.** That plaintiffs may have suffered greater damage than other passengers ...

---

[24]*Hassine v. Jeffes*, 846 F.2d 169, 177 (3d Cir. 1988) (emphasis in original).

[25]*See Walco*, 168 F.R.D. at 326.

[26]*See Kornberg*, 741 F.2d at 1337; *Eisenberg*, 766 F.2d at 786.

[27]*In re Amerifirst Secs. Litig*, 139 F.R.D. at 428; *See also CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 696-97 (S.D. Fla. 1992); *Pottinger*, 720 F. Supp. at 958; *In e Alexander Grant Co., Litig.*, 110 F.R.D. 528, 534-35 (S.D. Fla. 1986).

[28]*Seidman v. American Mobile Sys, Inc.*, 157 F.R.D. 354, 360 (E.D. Pa. 1994) (citations omitted); *see also Shipes v. Trintiy Indus.*, 987 F.2d 311, 316 (5th Cir. 1993).

[29]*See* Defendant's Opposition at p. 11.

[30]*Kornberg*, 741 F.2d at 1337.

8

does not render them atypical. Differences in the amount of damages between the class representative and other class members does not affect typicality. **That [the defendant] may have a stronger defense against many passengers does not render plaintiffs atypical. Plaintiff's claim and [the defendants'] defenses against that claim are not markedly different than the claims of the rest of the class.**[31] (Citations omitted, emphasis added).

Here, there is nothing of any substance to distinguish Plaintiffs' claims against the Credit Union from those of any other Credit Union member who was sold Cornerstone bonds by Wellstone. Just as in *Kornberg*, here the named Plaintiffs' claims arise out of the same, single course of conduct that forms the basis of each putative Class member's claims, and are based upon the same legal theory as those of other Class members. These three named Plaintiffs and each member of the proposed Class were injured by the same negligent acts of the Credit Union. And despite Defendant's effort to remake the putative class member's claims into claims where causation becomes a substitute for reliance in a fraud claim, there is no such need for any individualized fact intensive inquiry. Defendant's single course of conduct, its negligence in placing Wellstone in the Credit Union, is the single cause of each putative Class members' and each Proposed Class Representatives' injuries – and each have been impacted in the *exact same manner*.[32] In short, each member of the class is a Credit Union member who purchased its Cornerstone Bonds from Wellstone. Thus each putative class member, including the named Plaintiffs, have exactly the same types of claims. "As long as Plaintiffs assert, as they do here, that Defendant committed the same wrongful acts in the same manner against all members of the class, they establish the necessary typicality."[33] The typicality requirement is clearly satisfied here.

---

[31] *Id*

[32] *See e.g.* Schorrig Dep. Tr. p. 47 ln 20- p. 48, ln 16; Sullivan Dep. Tr. P. 55, ln. 23-p. 56, ln. 6; Kuzenko Dep. Tr. p. 55, ln 5-9. A copy of these transcript excerpts is attached as Exhibit C.

[33] *In re Amerifirst Secs. Litig.*, 139 F.R.D. at 429.

DIMOND KAPLAN & ROTHSTEIN, P.A.

OFFICES AT GRAND BAY PLAZA, 2665 SOUTH BAYSHORE DRIVE, PENTHOUSE 2B, MIAMI, FL 33133 • TEL. 305.374.1920 FAX. 305.374.1961

### 4.   Plaintiffs Have Demonstrated Adequacy

Defendant directs its loudest argument at the adequacy of the Proposed Class Representatives.  But, rather than focusing on the components of adequacy that are universally recognized by Federal Courts, Defendant reaches back into its time machine 25 plus years to inject an adequacy argument that has not existed since 1982.

The actual adequacy requirement of Rule 23(a)(4) consist of two components. First, counsel for the Class Representatives must possess the competence to undertake the particular litigation. Second, the Court must find that the Class litigants are neither involved in collusive litigation nor have interests antagonistic to other Class members.[34] That is it. In class actions generally, adequacy of representation will be presumed.  In fact, "[a]bsent any conflict between the interests of the representative and other purchasers, and absent any indication that the representative will not aggressively conduct the litigation, fair and adequate protection of the Class may be assumed."[35] Plaintiffs' Motion for Class Certification clearly demonstrated both elements were met here.

### (a)   The Proposed Class Representatives are Adequate

As to the first component, Plaintiffs' counsel in this case are experienced in class action litigation and possess the requisite skill, ability, and experience to represent the Class in this action. The Defendant does not even argue to the contrary.  As such, competency of counsel does not appear

---

[34] *See Kirkpatrick*, 827 F.2d at 726-28; *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985); *CV Reit*, 144 F.R.D. at 698; *In Re Alexander*, 110 F.R.D. at 535.  *See also Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

[35] *Guarantee Ins. Agency Co. v. Mid-Cont'l Realty Corp.*, 57 F.R.D. 555, 565-66 (N.D. Ill. 1972) (citation omitted).

DIMOND KAPLAN & ROTHSTEIN, P.A.

OFFICES AT GRAND BAY PLAZA, 2665 SOUTH BAYSHORE DRIVE, PENTHOUSE 2B, MIAMI, FL 33133 • TEL. 305.374.1920 FAX. 305.374.1961

to be in dispute.[36]

And as to the second component, each of the three Proposed Class Representatives has been damaged as a result of the Credit Union's common course of wrongdoing, and each is committed to the vigorous prosecution of this case. Moreover, Plaintiffs' interests are not antagonistic to the interests of any other Class members as each seeks the same recovery – the value of their investment in the now worthless Cornerstone bonds. As such, the interests of all Class members are aligned, and the named Plaintiffs will fairly and adequately protect those interests. Thus, the Proposed Class Representatives have satisfied the adequacy requirement of Rule 23(a)(4).

### (b)    Defendant's Obsolete Standard is Inappropriate

Defendant attempts to challenge Plaintiffs' adequacy through the use of a long abandoned line of case law. Moreover, Defendant either does not know of, or fails to acknowledge the obsolescence of their argument. Regardless, Defendant's argument fails.

Defendant's primary challenge to the Proposed Class Representatives' adequacy is based on the entirely innocuous and not unique fact that Plaintiffs' counsel is *advancing* the costs of litigation here. But, there is no support for that position. In fact, the only support Defendant can muster is thirty-year-old, no-longer-applicable case law.[37]

For example, Defendant leans heavily on *In re Mid-Atlantic Toyota Antitrust Litig.*, in which the court based its adequacy determination solely on the ABA's Model Code of Professional

---

[36]In the event that the competence of Plaintiffs' counsel is disputed by Defendant, a copy of Plaintiffs' counsels' firm resumes will be made available for the Court's consideration.

[37]*See In re Mid-Atlantic Toyota Antitrust Litig.*, 93 F.R.D. 485 (D. Md. 1982); *Rode v. Emery Air Freight Corp.*, 76 F.R.D. 229 (W.D. Pa. 1977). Defendant also cites to a 15 year old and 23 year old law review articles, each of which have virtually nothing to do with adequacy, and rather, recognize the longstanding principle that through its inherent powers to manage class actions and approve *fees*, the court serves to protect absent class members.

11

DIMOND KAPLAN & ROTHSTEIN, P.A.

OFFICES AT GRAND BAY PLAZA, 2665 SOUTH BAYSHORE DRIVE, PENTHOUSE 2B, MIAMI, FL 33133 • TEL. 305.374.1920 FAX. 305.374.1961

Responsibility Disciplinary Rule 5-103(B).[38]  That rule reads, in relevant part:

> While representing a client in connection with contemplated or pending litigation, a lawyer shall not advance or guarantee financial assistance to his client, except that a lawyer may advance or guarantee the expenses of litigation, including court costs, expenses of investigation, expenses of medical examination, and costs of obtaining and presenting evidence, provided the client remains ultimately liable for such expenses.

Thus, in *Mid Atlantic*, the Court reasoned that because plaintiffs' counsel had agreed to advance the costs of litigation without a guarantee of re-payment by plaintiffs, the terms of representation violated DR 5-103(B), and thus made the named plaintiffs "inadequate" class representatives.  But, Defendant either fails to mention or does not know that the ABA replaced the Model Code of Professional Responsibility ("Code of Professional Responsibility"), including DR. 5-103(B), in 1983 – approximately one (1) year after the decision in *Mid Atlantic*.

Since that time, the ABA – and virtually every state in the United States – has adopted the ABA Model Code of Professional Conduct ("Code of Professional Conduct").[39]  Importantly, the Code of Professional Conduct replaced the former DR 5-103 with Rule 1.8.  That rule now reads as follows:

> ### Rule 1.8 Conflict of Interest: Current Clients: Specific Rules
> ***
> (e) A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that:
>
> (1) a lawyer may advance court costs and expenses of litigation, **the repayment of which may be contingent on the outcome of the matter;**[40]

---

[38]*See Mid-Atlantic*, 93 F.R.D. at 490.

[39]California (which has never adopted any of the ABA's professional conduct standards) is the only state which has not adopted the Code of Professional Conduct. *See* the ABA list of States adopting the Code of Professional Conduct, attached hereto as Exhibit D.

[40]Florida adopted this version of Rule 1.8 in 1986; *see* Florida Rules of Professional Conduct, Rule 4-1.8(e).

DIMOND KAPLAN & ROTHSTEIN, P.A.

OFFICES AT GRAND BAY PLAZA, 2665 SOUTH BAYSHORE DRIVE, PENTHOUSE 2B, MIAMI, FL 33133 • TEL. 305.374.1920 FAX. 305.374.1961

Thus, the barrier to adequacy raised by the court in *Mid-Atlantic*, and advocated by Defendant here, *no longer exists*. In fact, even the *Mid-Atlantic* court recognized the on-coming change by stating:

> The Court's order on this motion is without prejudice to plaintiffs' renewing their motion **should the laws change in either of the jurisdictions so as to allow the practices of plaintiffs' counsel.**[41]

Thus, even the court in *Mid-Atlantic Toyota* recognized that its own decision might have limited, if any precedential value, based upon the transition to the Rules of Professional Conduct.

Undeterred by the obsolescence of its argument, Defendant also cites *Rode v. Emery Air Freight Corp.* – another pre-Rules of Professional Conduct case – for support.[42]

But, *Rode* is not even a class certification decision. Rather, *Rode* only concerns a motion to compel financial information from a potential class representative. Based on the then prevailing law, the court granted the motion to compel.[43] Interestingly, however, the court in *Rode* specifically noted at the end of its decision:

> **We do not hold that a lack of funding by the representative plaintiff, without more, is sufficient to warrant denial of class certification.** 'Whether a party adequately represents a class depends on all the circumstances of the particular case.' (Citations omitted, emphasis added).

Thus, both the *Mid-Atlantic* and *Rode* courts appear to have been more clairvoyant than the Defendant here, which has had the benefit of the last 27 years of law.

        (c)     <u>The Proposed Class Representatives are Not "Professional Plaintiffs"</u>

Defendant cites *In re Telxon Corp. Sec. Litig.*, and *Aronson v. McKesson* for its equally odd

---

[41]*See Mid-Atlantic*, 93 F.R.D. at 491.

[42]*See Rode v. Emery Air Freight Corp.*, 76 F.R.D. 229 (W.D. Penn. 1977).

[43]*Id.*

13

proposition that, somehow, Plaintiffs are akin to "professional plaintiffs." But that assertion wildly misses the mark.[44]  In fact, *Telxon* and *McKesson* are both *exemplars* of why the Proposed Class Representatives here are adequate representatives and not "professional plaintiffs."

In *McKesson*, the court was concerned with a motion for lead plaintiff status (not a motion for class certification) pursuant to the Private Securities Litigation Reform Act ("PSLRA"), and its presumption against lead plaintiff status by a plaintiff that has previously served as a lead plaintiff in more than five (5) securities class actions in a three year period.[45]  Similarly, *In re Telxon* also dealt with a motion for lead plaintiff status under the PSLRA.[46]

Interestingly, the court in *In re Telxon*, examining the PSLRA's "Professional plaintiff" bar, noted that the term "Professional plaintiff was ordinarily used to describe a plaintiff with small, often nominal holdings." Here, each of the Proposed Class Representatives, as acknowledged by the Defendant, has more than a nominal stake in this litigation.  Each has a claim that well exceeds $50,000.00, and in the case of two of the Proposed Class Representatives, their claims exceed $75,000.00.  In fact, as noted above, Eleventh Circuit precedent *requires* that at least one of the Proposed Class Representatives have a stake in excess of this Court's minimum jurisdictional amount.[47]

---

[44]*See In re Telxon Corp. Sec. Litig.*, 67 F. Supp.2d 803 (N.D. Ohio 1999); *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp.2d 1146 (N.D. Cal. 1999).

[45]*See Id.* at 1156.

[46]*See In re Telxon*, 67 F. Supp.2d at 813.

[47]*See Cappuccitti, supra.*  It appears that Defendant wants to have it "both ways."  Defendant seems to argue that the Proposed Class Representatives' interests are to large to satisfy Rule 23's numerosity requirement (which they clearly are not), yet too small satisfy Rule 23's adequacy requirement.

14

DIMOND KAPLAN & ROTHSTEIN, P.A.

OFFICES AT GRAND BAY PLAZA, 2665 SOUTH BAYSHORE DRIVE, PENTHOUSE 2B, MIAMI, FL 33133 • TEL. 305.374.1920 FAX. 305.374.1961

### (d)     The Proposed Class Representatives Understand Their Obligations

Finally, contrary to Defendant's assertions, each Plaintiff has demonstrated that they understand their obligations as they relate to this action, and demonstrated a keen understanding of the status and progress of the matter.  During each of the Proposed Class Representatives' depositions, each clearly demonstrated: (i) an understanding of the obligations of a class representative; (ii) knowledge of the current status of the action; and (iii) that they regularly communicated with counsel and reviewed the filings in this action.[48]  Nothing more is required here.[49]

Plaintiffs' have unquestionably demonstrated their adequacy and the requirements of Rule 23(a)(4) are satisfied.

## B.     Rule 23(B) Has Been Satisfied

Rule 23(b)(3) provides, in pertinent part:

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> *     *     *
>
> (3) the Court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

These requirements, commonly referred to as "predominance" and "superiority" are readily satisfied here.

---

[48]. See Schorrig Dep. Tr., p. 58, ln 9-p.62 ln. 9; p. 78, ln. 15- p. 81, ln 7; p. 94, ln. 22- p. 96, ln. 9; Sullivan Dep. Tr., p. 45, ln 2-25; p. 47, ln. 4-25; Kuzenko Dep. Tr., p. 47, ln 10-18; p. 54, ln 12-p. 55, ln. 5; p. 56, ln 3- pg. 56, ln 13.  A copy of these excerpted pages is attached hereto as Exhibit E.

[49]See Veal v. Crown Auto Dealership, Inc., 236 F.R.D. 572, 579, n.3 (M.D. Fla. 2006).

DIMOND KAPLAN & ROTHSTEIN, P.A.

OFFICES AT GRAND BAY PLAZA, 2665 SOUTH BAYSHORE DRIVE, PENTHOUSE 2B, MIAMI, FL 33133 • TEL. 305.374.1920 FAX. 305.374.1961

1.    **Common Questions of Law and Fact Predominate**

In determining whether common questions predominate, it is well established that the Court's

inquiry should be directed primarily towards the issue of liability. As one court explained,

> Rule 23(b)(3) does not require that all questions of law or fact be
> common; it only requires that the common questions **predominate**
> over individual questions. Courts generally focus on the liability
> issue in deciding whether the predominance requirement is met, and
> if the liability issue is common to the class, common questions are
> held to predominate over individual questions.[50]

As framed by Plaintiffs' Complaint and demonstrated in the Motion for Class Certification,

the critical issues of law and fact raised in this action are (i) whether the Credit Union was required

to conduct due diligence regarding Wellstone before placing Wellstone in Credit Union branches,

and (ii) whether the Credit Union's failure to conduct such due diligence breached its duties to its

members. This issue is common to all members of the Class, is not extraordinarily complex, and

will clearly predominate in this case.[51]   Curiously, Defendant attempts to build its straw man

argument regarding individualized proof of causation through the use of *Veal*. But, as the court

noted in *Veal* (a case in which class certification was granted):

> While the class members of may not have identical claims, Plaintiff
> has sufficiently established that the common questions fact and law
> regarding Plaintiff's FDUPTA claim, **including the issue of
> causation, predominate over individual issues.**

Likewise the putative Class Members' and Proposed Class Representatives' single negligence

claim is also subject to generalized proof of causation. As noted earlier, each Proposed Class

---

[50]*Dura-Bilt Corp.*, 89 F.R.D. at 93 (citations and footnote omitted); *see also* 4 H. Newberg, *Newberg on Class Actions* §§4.21 and 4.25 (1992).

[51]*See, e.g., Eisenberg v. Gagnon,* 766 F.2d 770, 786 (3d Cir. 1985).

16

Representative testified to the same uniform, top down proof of causation.[52] That is to say, each Proposed Class Representative clearly testified that the *cause* of their loss was the Credit Union's single act of associating with Wellstone Securities by placing Wellstone Securities in Credit Union branches.[53]

Defendant's effort to turn generalized causation into individualized causation simply misses the point.  Specifically, Defendant points to testimony by the Proposed Class Representatives regarding whether or not each had read the Credit Union's newsletters, which Defendant readily admits touted Wellstone.[54]  But, whether any member of the putative class or the Proposed Class *relied* on a newsletter is simply irrelevant.  Putative class members' and the Proposed Class Representatives' claims are subject to generalized proof of causation.[55]  That is because each class member was impacted by Defendant's actions in the exact same way; *i.e.* each is a Credit Union member who purchased a now worthless Cornerstone bond from Wellstone – the entity placed by the Credit Union in its branches.  As noted by the Court in *Sala* (in certifying a negligence class):

> Thus, when a ... violation of impacts upon a class of persons ... **there is no reason in doctrine why proof of the impact cannot be made on a common basis so long as the common proof adequately demonstrates some damage to each individual.**[56]

---

[52]*See* FN. 21, *supra.*

[53]*Id.*

[54]*See* Opposition at 18.

[55]*See, e.g. Sala v. National R.R. Passenger Corp.*, 120 F.R.D. 494, 499 (E.D. Penn 1988) ("the issue of causation in this case can similarly be established on a class wide basis . . . the issue of causation focuses on the impact of a defendant's conduct upon individual class members which may be proved on a class wide basis").

[56]*Id.* quoting *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 454 (3d Cir. 1977).

17

DIMOND KAPLAN & ROTHSTEIN, P.A.

OFFICES AT GRAND BAY PLAZA, 2665 SOUTH BAYSHORE DRIVE, PENTHOUSE 2B, MIAMI, FL 33133 • TEL. 305.374.1920 FAX. 305.374.1961

But, Defendant here has improperly framed the issue in an attempt to confuse the analysis. The issue in this negligence case is not whether any putative class member would have purchased Cornerstone bonds from Wellstone under a different set of facts – *i.e.* if the Defendant had not brought Wellstone into Credit Union branches without conducting minimal due diligence or failing to disclose that Wellstone was a bucket shop rife with fraud. Rather, the issue is whether any class member would have purchased Cornerstone bonds from Wellstone if the Credit Union had not breached these minimal duties. And, when viewed more appropriately in this manner, both well established case law and logic dictate that this case falls into a category where causation is self-proving. That is to say, no class member would have purchased Cornerstone bonds from Wellstone, knowing it was part and parcel of a fraud. The law is in accord.[57]

Thus common issues predominate over any individual issues in this case, satisfying the first prong of Rule 23(b)(3).

### 2.      A Class Action Is Superior

In addition to mandating the predominance of common questions, Rule 23(b)(3) requires the Court to determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." As demonstrated in Plaintiff's Motion for Class Certification and as virtually all of the previously cited authorities have recognized, a class action is superior to other available methods for the fair and efficient adjudication of a controversy affecting a large number of individuals injured by a common scheme. As the court explained in *Sher*:

> In many respects, the predominance analysis . . . has a tremendous impact on the superiority analysis for the simple reason that, the more

---

[57]*See, e.g. Spencer v. Hartford Fin. Ins. Serv. Group.*, 256 F.R.D. 284, 302 (D.Conn. 2009) (Holding reliance can be self proving); *See also Sala, supra.*

18

common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims.[58]

Rule 23(b)(3) instructs a court to consider the following factors when attempting to make this determination as to whether a class action is superior to other available methods:

> (A) the interest of members of the class in individually controlling the prosecution ... of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by ... members of the class; (C) the desirability ... of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

Contrary to Defendant's assertions, those factors all lead to the conclusion that class certification is a superior method of resolving this controversy. First, there are no other actions that have been brought on behalf of Cornerstone bond holders since the collapse of the investment fraud, and certainly no other actions against this Defendant. And the fact that no such actions have been initiated suggests that, despite Defendant's protestations, the cost and expenses of individual actions, when weighed against the individual recovery obtainable, has been deemed to be prohibitive by potential claimants.[59]  Again, Defendant's argument that the size of the Proposed Class Representatives' stake militates against certification is nonsense. Absent at least one of the Proposed Class Representatives having a claim in excess of $75,000.00, this Court would *not even have jurisdiction*.[60]

The fact that no other litigation relating to Plaintiffs' claims has been commenced by

---

[58]*Sher v. Raytheon,* 261 F.R.D. 651, 670 (M.D. Fla. 2009) *quoting Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir 2004).

[59]*In re Amerifirst Secs. Litig.*, 139 F.R.D. at 435 (citation omitted).

[60] *See Cappuccitti*, 2010 WL 2803093, at *4.

19

DIMOND KAPLAN & ROTHSTEIN, P.A.

OFFICES AT GRAND BAY PLAZA, 2665 SOUTH BAYSHORE DRIVE, PENTHOUSE 2B, MIAMI, FL 33133 • TEL. 305.374.1920 FAX. 305.374.1961

members of the Class also militates in favor of class certification for the reason that it "negates the threat of inconsistent adjudications."[61]    Finally, there are no apparent difficulties likely to be encountered in the management of this matter as a class action, especially given its size.    While hundreds of individual lawsuits pertaining to the same issues would be wildly inefficient, there would be no meaningful managerial issues presented by a several-hundred-person Class.

Thus the superiority requirement of 23(b)(3) is satisfied.    This matter, accordingly, is ripe for class certification.

### III CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that this Court enter an order pursuant to Rule 23 of the Federal Rules of Civil Procedure: (1) certifying this action as a class action on behalf of the proposed Class defined herein; (2) certifying Claudia Schorrig, Ursula Kuzenko, and Jolene Sullivan as Class Representatives; and (3) designating Dimond Kaplan & Rothstein, P.A., Blum & Silver, LLP, and Sallah & Cox, LLC as co-lead counsel.

By:    /s/ David Rothstein, Esq.
JEFFREY KAPLAN, ESQ.
Fla. Bar No.: 39977
DAVID ROTHSTEIN, ESQ.
Fla. Bar No.: 0056881
LORENZ MICHEL PRÜSS, ESQ.
Fla. Bar No.: 581305
DIMOND KAPLAN & ROTHSTEIN, P.A.
Offices at Grand Bay Plaza
2665 South Bayshore Drive, Penthouse 2B
Miami, Florida 33133
Telephone    (305) 374-1920
Facsimile:    (305) 374-1961
*Attorneys for Plaintiffs*

---

[61]*Walco*, 168 F.R.D. at 337.

DIMOND KAPLAN & ROTHSTEIN, P.A.

OFFICES AT GRAND BAY PLAZA, 2665 SOUTH BAYSHORE DRIVE, PENTHOUSE 2B, MIAMI, FL 33133 • TEL. 305.374.1920 FAX. 305.374.1961

SCOTT L. SILVER, ESQ.
 Fla. Bar No. 095631
BLUM & SILVER, LLP
12540 W. Atlantic Blvd.
Coral Springs, FL 33071
Telephone:    (954) 255-8181
Facsimile:    (954) 255-8175
*Attorneys for Plaintiffs*

JAMES D. SALLAH, ESQ.
 Fla. Bar No. 0092584
SALLAH & COX, LLC
2101 Corporate Blvd., Suite 218
Boca Raton, FL 33431
Telephone:    (561) 989-9080
Facsimile:    (561) 989-9020
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this August 9, 2010, I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic

filing to the following counsel and parties of records, except as otherwise noted.

**Jeffrey Aaron Backman, Esq.**
**Robin Corwin Campbell, Esq.**
Adorno & Yoss
350 E Las Olas Boulevard, Suite 1700
Fort Lauderdale, FL 33301-4217
Telephone: 954-763-1200
Fax: 954-766-7800
jbackman@adorno.com

By   /s/David Rothstein, Esq.
        David Rothstein, Esq.

21